March 26, 1860.

## SUPREME COURT—AT CHAMBERS.

IN THE MATTER OF J. T. WATERHOUSE—PETITION FOR A WRIT OF MANDAMUS.

WRIT of mandamus is a matter of discretion with the Court, to be exercised upon legal and equitable considerations.

Proper remedy when an inferior tribunal refuses to act upon a subject properly brought before it.

The Court will never direct an inferior tribunal how to decide, but will require it to proceed to judgment.

Will not lie to control or coerce the *discretion* of a subordinate tribunal.

Not the proper remedy to correct irregularities in the proceedings ; they ought to be excepted to and made the basis of an application for a writ of error, or brought up on appeal in the ordinary way.

When goods have been distrained by the Tax Collector, under Section 503 of

the Civil Code, and an order for their sale applied for, from the Magistrate, the proceedings on such an application are unlike a suit at law between parties, and not subject to the rules affecting such suits, and the Justices may adopt and pursue such a mode as may seem fair and reasonable in the discharge of their duty; full latitude allowed in the introduction of testimony, that the Magistrate may be informed as to the propriety of the Tax Collector's acts, with a view to authorizing him to sell the goods distrained.

Duty of the Magistrate to issue the order of sale, when the official requiring the order is proved to be the legally appointed Tax Collector, that the property seized is at least *prima facie* the property of the person by whom the tax is due, and that it is a reasonable quantity, and that a legal notice of the sale is given.

The application for an order to sell is directed to the sound legal discretion of the Magistrate, and it is his duty to exercise it.

No Police or District Justice authorized to cite and apply the provisions of the fourteenth section of the Civil Code in any case whatever.

ALLEN, C. J.

The petitioner sets forth that he was cited to appear before Robert G. Davis, Esq., Police Justice for the city of Honolulu, on the 7th instant, at the instance of William Webster, alleged to be a Tax Collector for one of the districts of Oahu, and that the case was postponed till the 13th, when said Webster introduced evidence against the petitioner, and closed his case, whereupon the said petitioner, being of the opinion that he had no occasion to offer any evidence to the Court, moved that the complaint or petition of said Webster be dismissed; that the said Magistrate thereupon deferred judgment on your petitioner's said motion till the 13th, on which day he proceeded to give a lengthy judgment on the said motion of your petitioner, in which said judgment the said Magistrate averred or stated that the said Webster had not offered evidence, such as would enable the said magistrate to grant the prayer of the petition of the said Webster, and yet he refused to grant the motion to dismiss, and ordered that the said Webster should bring before him other evidence to support his petition, and that the order was made without motion; against which proceeding petitioner excepted and desired that the magistrate would certify the proceedings to the Supreme Court, which he refused to do, and after the usual averments of tender of costs and bond, " prays that the said Robert G. Davis may be com-

manded to certify to your Honorable Court the proceedings in the case of William Webster against John T. Waterhouse, together with his (the said Magistrate's) decision in the premises—that is to say, on the motion of the defendant, your petitioner—and your petitioner further prays that, when the said proceedings may have been certified, the said decision of the said Magistrate, Robert G. Davis, Police Justice of Honolulu, as aforesaid, to wit: "That the said William Webster may be allowed or ordered, or required to produce further testimony in the case, may be reversed," and that the said Police Justice may be commanded to give judgment in the premises on the evidence which has been adduced before him, at the instance of the said plaintiff.

Whereupon an order was issued to the Police Justice to appear before the Chief Justice and show cause why a writ of mandamus should not issue directing said Justice to give judgment in the case of Webster *vs.* Waterhouse, on the evidence already adduced, and that he should bring with him the records of the proceedings had in said suit.

The Police Justice appeared before the Court and made substantially the answer following :

First. That there is not now, nor has there ever been, a *suit* pending before him as Police Magistrate, in which William Webster, as an alleged Tax Collector for one of the districts of Oahu, is plaintiff and John T. Waterhouse is defendant, in which he could render a judgment, and that therefore a mandamus to compel him to give a judgment would require of the respondent to do an absurdity.

Second. That he brings into Court the record of proceedings as prayed for, and says that he does not regard himself as acting in a judicial capacity in the application for said order to sell, and therefore is not bound by the ordinary rules of law in admitting or rejecting evidence, or of those regulating the mode of judicial proceedings.

Third. That a citation was issued by him to said Waterhouse, at the suggestion of the District Attorney of Oahu, to come in and show cause why an order should not be issued to the Collector of Taxes to sell his property which had been seized, that said Waterhouse might be advised that an applica-

tion had been made for such order, that he might appear if he
deemed it right, etc., for his interest to show cause why such
an order should not be granted, if within his power, or that he
might take legal measures, if he desired to test the legality of
the statutes of this Kingdom for the assessment and collection
of taxes, or of the proceedings of the Department, or officers
whose duty it is to carry those laws into effect; but that such
citation, or summons, was not required to be issued by law, and
was therefore only an act of courtesy, and had this respondent
granted the order *ex parte* without issuing such citation or sum-
mons, it would not have been in the power of any Court of this
Kingdom to set the same aside, and had property been sold on
such an order, the order of sale would have been held good, and
had John T. Waterhouse been injured thereby he could have
his remedy in the courts of the country, like any other resident
or subject who has been trespassed upon by his neighbor.

Therefore the respondent prays that the petition for a man-
damus to compel him to certify to this Honorable Court the
proceedings against John T. Waterhouse on trial before him as
alleged, on the 13th of February, A. D. 1860, and that when the
said proceedings have been certified, that the decision of the
respondent that William Webster, as Collector of Taxes, may
be allowed to produce further testimony in that case may be
reversed, and that this respondent may be commanded to give
judgment in the premises on the evidence before him, may be
dismissed with costs, and that the respondent may be allowed
to discharge his duty, as he is ready and willing to do, accord-
ing to law.

The writ of mandamus is a matter of discretion with the
Court, to be exercised upon legal and equitable considerations.
It is certainly a proper remedy when an inferior tribunal re-
fuses to act upon a subject when brought properly before it;—
a Supreme Court will never direct an inferior tribunal how to
decide, but will require it to proceed to judgment; a mandamus
will not lie to control or coerce the discretion of a subordinate
tribunal. (1 Wendell, 299; 7 Cowen, 363, 523; 11 Pick., 189.)
It is said by the respondent that he is ready and willing to pro-
ceed to the further investigation of this case, and will then give
judgment, but that he has a discretion to exercise in the mode

of proceeding. It is a general rule of practice in common law courts that, when both parties have closed and rested, and arguments submitted, it is the duty of the Judge then to decide on the case as presented, and this rule should be regarded. As the record stands, the petitioner made a motion to dismiss, and that motion remains undecided; instead of doing which, the Court entered into a legal argument on the general question, and suggests to the applicant for the order to sell to introduce further evidence. This is a course not recognized by legal tribunals. This motion, if properly entertained by the Police Court, should have been decided; still it is an interlocutory motion, and a mandamus is not a proper remedy to regulate the proceedings as they are progressing. It can only apply when the Court refuses to decide.

Where a Court of inferior jurisdiction has no power to grant a new trial, after a verdict on the merits, a mandamus will be awarded to compel them to enter judgment. (1 Johnson's Cases, 179; 7 Peters, 635.) A District Judge in the United States Court was ordered to reinstate a cause, make up the record, try the cause and enter judgment, in order to give the demandant the benefit of a writ of error. In this case, if the Police Justice should pursue the course indicated by him in his written opinion, it could not deprive the petitioner of his right to have the case presented to the Supreme Court. And in the consideration of the question now before the Court, they do not regard it legitimate for them to examine into the regularity of the proceedings in the Police Court, as they would do on a writ of error. In the case exparte Myra Clarke Whitney (13 Peter's, 404), Judge Story said, that the prayer of the petitioner was for a mandamus in the nature of a writ of procedendo to compel the Circuit Court of the United States to proceed according to chancery practice, in her suit against Richard Reef and others to answer her bill, and to suffer the petitioner in all things to proceed in the cause in such manner as the Constitution and laws of the United States and the principles and usages in equity would authorize.

That it was the duty of the Circuit Court to proceed in that suit according to the rules prescribed by the Supreme Court for proceedings in Equity causes at the February Term thereof,

A. D. 1822, could admit of no doubt.   That the proceedings of the District Judge, and the orders made by him in the cause, which were complained of, were not in conformity with those rules and with chancery practice could admit of as little doubt. But the question was not as to the regularity and propriety of those proceedings ; but whether the cause before him was one in which a mandamus ought to issue.   And he was of opinion that it was not such a case.   The District Judge was proceeding in the cause, however irregular that proceeding might be deemed; and the appropriate redress, if any, was to be obtained by an appeal after the final decree should be had in the cause. (See 15 Peter's, 9 ; 14 Peter's, 599, 614.)

It is the duty of this Court to review the proceedings of the subordinate tribunals on all proper applications when they exceed their jurisdiction, or assume a power not warranted by law, and if the Police Magistrate, as is alleged by the counsel for the petitioner, assumed powers vested in a Court of Equity, he misapprehended his duty and his powers, and it was a clear misapplication of the meaning and intent of Sec. 14 of the Civil Code.   It is due to him to say, however, that he alleges that he intended to claim no such equity power, but merely to exercise a sound discretion in his interpretation of the provisions of the law on which the application for the order of sale was made.

It is contended in this case that the duty of the Police Judge is ministerial, and that instead of not proceeding, that he has proceeded too far in seeking for a basis on which to rest his judgment on the application for an order of sale.   While by the learned counsel for the respondent in that application it is contended, that if his acts should have been ministerial under the provisions of the tax law, still having conducted the matter judicially, he cannot now be released from his course of proceeding.   This question having been raised, and ably argued, although not necessary for the decision of the motion for a mandamus, still the Court regard it their duty to give a construction to the statute upon which the original proceedings were predicated, and which gave occasion for this application. The Section referred to is as follows :

"SECTION 503.   The said collector shall call on each tax

payer at his residence, or usual place of business, or otherwise give notice to the tax payers to meet him at convenient points or settlements of the district, in the months of September, October and November, to demand payment of the taxes assessed as aforesaid ; and if any person shall neglect or refuse to pay his taxes, when so called upon or notified, until the last day of November, the tax collector may levy the same by distress upon so much of the goods and chattels of such person, as he may deem sufficient for the payment of taxes and expenses of collection, and sell the same upon the order of the District Judge or Police Magistrate, after a public notice of five days. In case no property can be found whereon to levy, then such person, if able bodied, may, by sentence of said Judge or Magistrate, be compelled to discharge the amount of his tax by labor on the public roads, or other public works, at the rate of twenty-five cents per day."

That portion of the section which authorizes the collector to distrain the goods and chattels for non-payment of taxes is very clear, and in accordance with the usual provision of laws for the collection of taxes in other countries. The theory of the law is that the Government must be sustained, and to do this it must be saved from bankruptcy, and therefore this summary proceeding has always been regarded as a necessity. Those statutes are designed to prevent delay in the collection, giving however all legal rights afterwards to test the validity of the law imposing the tax, and the mode of assessment—in fine, all other questions bearing upon it. This theory pervades all laws for the raising of revenue for the support of governments. Duties are paid at the Custom House under protest, and the remedy is sought afterwards in the Courts of the country. Still the money is paid in all cases, no matter whether it arises from internal taxes or from duties upon importations. In the United States, special statutes have been passed to hasten the proceedings in suits on bonds for duties, and which do not apply to suits at law generally. It is there made the duty of the Court, when a suit has been instituted on any bond for the recovery of duties, to grant a judgment at the return term upon motion, unless the defendant shall in open Court make oath that an error hath been committed in the liquidation of the

duties demanded upon said bond, specifying the error. If the Court are satisfied that a continuance is necessary, for the attainment of justice, and not otherwise, a continuance may be granted to the next succeeding term and no longer. So that the measures of legislation for the collection of internal taxes are always summary, and whenever bonds are taken for the collection of duties on importation, which I believe few countries now permit, a more summary course is imposed on the Courts than in ordinary suits. This however is not intended to infringe upon or sacrifice the rights of the tax payer; whatever defense he may have against the claims of the Government can be fully presented, and if founded in law and justice will most certainly prevail.

Had the statute of this Kingdom conformed to that of most other countries for the collection of internal taxes, no question would probably have arisen on its construction, but an additional provision is made to the effect that after the collector has distrained the goods and chattels, it is made his duty to make application to the District Judge or Police Magistrate for an order of sale, of which a public notice of five days shall be given. In the application for the order of sale, is the duty of the District Judge or Police Magistrate merely ministerial? It is true that a judicial officer may by statute be empowered to perform a merely ministerial duty, and a mandamus is the proper mode by which to enforce that duty—such for example as signing a judgment, or granting a bill of exceptions. But in this case, if the duty is merely ministerial, of what use is it? If the magistrate has no more power than this, why the additional provision? It is to be regretted that the Legislature does not state fully the intent of the law, and the duty of the officers who are to enforce it. If the tax payer was to have by this statute an additional guard over his rights, to what extent does this section give it? The learned counsel for the petitioner contends that the duty is judicial to the fullest extent, and that it is the duty of the Court as fully to consider the case in all its legal bearings, viz : the validity of the law imposing the tax, the mode and manner of assessment, and the acts of the collector, as if he had instituted an action of trespass against the collector for seizure of the goods. The law contemplates

J. T. Waterhouse for a Writ of Mandamus.

an annual tax, and it is made the duty of the tax collector to pay to the governor of the island in which his district is situated, the amount of taxes by him collected, except the school tax, on or before the last day of December in each year. If the seizure and order of sale are only preliminary proceedings, subject to the delay incident to courts of law, the purpose of the Government is not obtained; its treasury may be bankrupt and its power overthrown. If the law was passed with reference to the analogies I have adverted to, is it not reasonable to suppose that the intention of the Legislature was to give additional means, promptly within the time specified? Would it not be an extraordinary stretch of judicial power and contrary to the uniform practice. of courts, that the whole judicial investigation should be had as a preliminary to the collection of the taxes?

I am of the opinion that the Legislature could not have entertained such an extraordinary intent, as preliminary to the collection of the taxes which they had imposed, to subject the law to the adjudication of the District Judges or Police Magistrates—a law which frequently involves the highest and most important principles within the range of judicial learning. It must be borne in mind that while Government is bound to give protection to the subject, and to all residents within its borders, the duty is reciprocal, by furnishing the means to that Government to afford that protection. This is no new principle. It lies at the basis of all Governments.

If, then, the duty of the Magistrate is not ministerial, judicial to the extent to which I have adverted, the question arises what is his duty by virtue of the statute? I regard it his duty to issue the order of sale, if the official proves that he is the legally appointed Collector, and that the property seized is at least *prima facie* the property of the person by whom the tax is due, and that it is a reasonable quantity, and that a legal notice of the sale may be given; so that a sacrifice may be avoided and there may be some other requisites in some cases to guard the owner of the property against injury. This provision may be very salutary in this country, where experience in executing laws is less than in the old countries. It was given by the Legislature as an especial shield of protection against inexperience or injudicious collectors, but not as an instrument to

defeat this source of revenue, till, perhaps, one of the highest duties of the Government should be sacrificed, which is the payment of its debts and the preservation of its credit.

This is the view which the Court entertains of the statute upon which the question has arisen. I should not have given this opinion upon the statute on a motion for a mandamus had it not been presented and argued by the learned counsel in the case. As it has been, I felt it my duty to do so.

There is another reason why the Court would feel obliged to refuse the mandamus, even if the views so ably presented by the petititioner, that he was now entitled to a full judicial investigation, were tenable. I regard the application for the sale of goods and chattels seized by the Collector as unlike a suit at law. Pleadings are not required—no formalities are requisite. In a suit at law it is the duty of the Court to decide the case as presented. The application for an order to sell is directed to the sound legal discretion of the Magistrate, and it is his duty to exercise it. The statute makes it his duty to investigate the matter, and although the Collector, or the person-taxed, might not conform to the rigid rules of presenting a case in a common law Court, still I should regard the Magistrate derelict in his duty if he failed to pursue the investigation till he became satisfied whether it was his duty to grant the order or not.

In a suit at law the duty is upon the parties to present their case. In an application for an order to sell under this statute referred to, it is the duty of the Magistrate to satisfy himself; and that duty cannot be defeated either by the stupidity, the negligence or the adroitness of one party or the other, in their application to the proceedings of the rigid rules which obtain in common law Courts.

The Legislature could not have anticipated that the Collector would become a party to a lawsuit on every application for an order to sell the goods and chattels which he may have seized for the non-payment of taxes. The provision is unusual, and the proceedings under it are still more so, but a little practice may make it feasible and useful, and prevent the Collectors from a hasty or imprudent administration of their office.

In view of the principles which govern the issue of a writ

of mandamus, I am of opinion that this is not a case that will warrant it. It would be a new application of the writ. The effect of this mode of interposition would be to retard the proceedings in the inferior Courts, so that the same cause might come before this Court in various forms before a final judgment.

The petition is therefore dismissed with costs.

---

An appeal having been taken to the full Court, Justice ROBERTSON delivered its decision as follows :

On the 28th ultimo the Chief Justice rendered his decision, at Chambers, refusing to grant the application of the petitioner, for a writ of mandamus to compel the Police Justice of Honolulu to give a final judgment on an application of William Webster, Tax Collector of Honolulu, for an order to sell certain personal property of the petitioner, distrained for nonpayment of taxes, which application is now pending before said Police Justice. The application for a mandamus now comes before the full Court, on appeal from the decision of the Chief Justice.

The facts of the case are so fully set forth in the written opinion and decision of the Chief Justice, that we deem it unnecessary for us to re-state them, in giving our opinion on the matter.

The relator, in his petition, does not confine himself to asking the Court to grant a mandamus to compel the Police Justice to proceed at once to final judgment, but he asks that the Justice may be required to certify up the record of his proceedings to this Court. It does not appear to us that this was necessary in the application for the mandamus ; but as the Chief Justice, at the relator's request, while granting an order to the Police Justice to appear and show cause against the application, required him also to bring up the record of his proceedings ; and as the Police Justice has done so and made that record a part of his answer, we regard the same as a part of the case now before us, and its correctness admitted. True, the petition goes on to ask that, when the

record shall have come up, the ruling of the Police Justice, permitting the Tax Collector to present additional testimony in support of his application, should be reversed by this Court. But it strikes us that it would be a novel proceeding for this Court to send a writ of mandamus to an inferior Court, commanding it to send up its proceedings, in a matter still pending and open before it, for the purpose of our revising and reversing a ruling made by such Court, as to the admission of, or refusal to admit, additional testimony, even if such ruling were erroneous on its very face.

Leaving aside that part of the petition to which we have just referred, and treating it as simply an application for a mandamus to compel the Police Justice to give a final judgment in the matter, on the evidence already adduced before him, the first question for us to decide would seem to be, is this a case in which a mandamus will lie?

In our opinion, this cannot be regarded as a suit between two parties, in the Police Court, in which William Webster is plaintiff, and John T. Waterhouse defendant, and in which a judgment would have to be entered in favor of one of the parties. We regard it as a special proceeding, had before the Police Justice, in the discharge of a special duty which is cast upon him, in common with other Police and District Justices of the Kingdom, by Section 503 of the Civil Code, and not a part of his ordinary duty as a Court of law. Nor is it a suit brought by the Tax Collector against John T. Waterhouse, to obtain a judgment and execution against him for the amount of his unpaid taxes. The law expressly relieves the Collector from the necessity of instituting such a suit, by authorizing him to distrain property for the payment of taxes, according to the assessment roll, without the authority of any Court.

Admitting, for the sake of argument, that this should be regarded as a civil suit between two parties, even then, it seems to us, the writ of mandamus ought not to be granted, as the case stands at present. Upon reference to the record of the Police Court, it appears that when the proceedings there were stayed, by this application for a mandamus, there were pending and undecided, a motion made by the relator's counsel, to dismiss the application of the Tax Collector, upon the evidence

as it then stood ; and a request that if his motion to dismiss should be denied, the relator should have the privilege of introducing further testimony on his side of the case.   If the motion to dismiss was properly entertained by the Police Justice, (which we think it was not, if this is a suit between parties,) and that motion remains undecided, then the case is still open ; and if that motion shall be denied, the relator may have the privilege which he claimed, of introducing testimony in opposition to the application for the order of sale.   His counsel argues before us that he is entitled to the mandamus, to compel the Police Justice to decide upon his motion to dismiss the Tax Collector's application ; but this is not what he asks for in the petition now before us, in which he states that his motion has already been decided in the negative ; and even if in his petition he did ask for this, he would not be entitled to it if this is a suit between two parties, for, in that case, the motion to dismiss is an improper motion—one which the Police Justice ought not to have entertained in a suit, and which this Court cannot, by mandamus, compel him to entertain or decide. Were we to do so, we would simply be adding one more to several irregularities which already characterize the proceedings in this matter.   Again, if this is a suit between two parties, no matter how many erroneous rulings, or irregularities, in regard to points of practice in the conduct of the case, may take place in the Police Court, this Court cannot interfere pending the proceedings by a writ of mandamus, to correct those errors or irregularities.   They ought to be excepted to, and brought up on appeal in the ordinary way, or made the basis of an application for a writ of error, at the proper time.

In our view of the case, however, the relator's counsel, in treating this proceeding as a suit between party and party, and asking this Court so to regard it, has made a mistake.   But, while we think this is clear, it appears to us equally clear that the argument of respondent's counsel, who contends that this Court has no right, under any circumstances, to control the Police Justice, in relation to the discharge of his duty in the premises, it being merely a ministerial duty, is altogether unsound ; for we think there can be no doubt that, if any Police or District Justice should refuse to entertain the application of

the Tax Collector, for an order to sell distrained goods, this Court might compel him, by mandamus, to hear and determine such application, in order that the goods might either be sold or released from distraint, without unnecessary delay. It seems to us that a mandamus would lie, to compel a Police or District Justice to discharge his duty in regard to the matter here involved, with the same propriety that it would to compel him to sign a certificate as an inspector of elections, under Sections 791 and 792 of the Civil Code, which subject affords another instance, in which the laws have imposed extra-judicial duties upon District Justices.

Treating the matter, then, not as a suit at law between the parties, but as a special proceeding before the Police Justice, under Section 503 of the Civil Code, has the Police Justice assumed an attitude which entitles the relator to a writ of mandamus, ordering said justice to do anything in the premises? In our opinion he has not. The Police Justice has neither refused to hear testimony and proceed with the matter before him, nor give a decision, when he shall have finished such inquiries as he deems necessary to guide him in the discharge of his duty.

As an application by a Tax Collector to a Police or District Justice, for an order of sale, is not the institution of a suit at law between parties, it is obvious that those Justices, in hearing and deciding upon such an application, are not bound to proceed according to the strict rules of pleading and practice applicable to such suits ; (indeed the District Justices are not strictly confined to forms in any case,) nor ought the parties interested, for or against such application, to be held to a rigid conformity with those rules. Such a mode of dealing with the subject would, in many cases, frustrate the evident design of the Legislature in requiring a Tax Collector to obtain the sanction of the magistrate before selling property distrained for taxes ; a provision which seems to be intended for the prevention of extortion, oppression, and litigation, as well as to afford an opportunity to any third party, claiming an interest in the property distrained, to protect his rights without resorting to a formal and expensive action at law.

We would not be understood, however, as approving the

application by the Police Justice, of the provisions of the fourteenth section of the Civil Code to this proceeding ; or as intimating an opinion that a Police or District Justice is authorized to cite and apply those provisions, in any case whatever. But, from the special nature of the duty imposed upon the Justices in regard to this subject ; from the consideration that the proceeding on application is not like a suit at law between the parties, nor subject to the rules affecting such suits ; and from the fact that the statute does not point out any particular mode of proceeding to be observed in these cases, we are of opinion that the Justices may adopt and pursue such a mode of discharging their duty in the premises as may seem fair and reasonable, and best adapted to the purpose. No injustice can result from their adopting such a practice as will permit, to all parties interested, full latitude in the introduction of testimony necessary for the information of the Magistrate, as to the propriety of the Tax Collector's acts, and of authorizing him to sell the goods distrained. Such a mode of procedure will tend to insure justice, and prevent injuries to private rights.

In our opinion the decision of the Chief Justice, at Chambers, must be affirmed, and the mandamus refused.

C. C. Harris attorney for petitioner.

A. B. Bates for the respondent.