# Shaaber, Appellant, *v.* Reading City.

[Marked to be reported.]

*Land damages—Tenancy at will.*

Where a lease has been terminated by a notice to quit, the tenant who holds over as tenant at will has no interest for which he can recover damages for the opening of a street.

*Probability of continuance—Market value—Evidence.*

Where the notice to quit has been given, there can be no recovery for probability of a renewal or continuance of the tenancy which gave the leasehold a market value. And it is inadmissible for that purpose to show that the custom of the landlord (a railroad) was to continue the tenancy indefinitely and that the notice to quit was given only by reason of the proceedings to open the street.

Argued March 2, 1892. Appeal, No. 166, Jan. T., 1892, by plaintiff, from judgment of C. P. Berks Co., Oct. T., 1890, No. 83, on verdict for defendant. Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Appeal from report of viewers assessing damages for opening street, on petition of councils.

The facts as they appeared at the trial before ERMENTROUT, P. J., are chiefly stated in the opinion of the Supreme Court.

The habendum and tenendum clause of the lease contained the following: "To deliver up peaceable possession of the demised premises to the party of the first part, at any time after the first day of November, 1883, upon receiving three months' written notice so to do from the said party of the first part, notwithstanding the fact that the said party of the second part may have been paying rent after the expiration of the term hereinabove created, and but for this covenant would be in the position of a tenant from year to year."

On March 14, 1888, councils of the city of Reading passed an ordinance authorizing the opening of Fifth street. About Feb. 8, 1889, the highway commissioner of the city notified the plaintiff to remove his ice house or refrigerator situate within the lines of Fifth street within thirty days. On June 29, 1889, the city tendered plaintiff a bond securing damages to him, if any, which he refused, whereupon the court of common pleas, on July 1, 1889, approved the same and ordered it to be filed.

Plaintiff proposed to prove by George D. Stitzel, who was in the employ of the Phila. & Reading R. R. Co., having charge of their real estate in and about the city of Reading, and employed to make leases of their property, that it was the invariable custom of the Phila. & Reading R. R. Co. not to terminate the tenancy of their tenants so long as the tenants paid the rent punctually, and so long as the company did not need the land for railroad purposes; that this custom was well known to the plaintiff, and was fully explained to him by the witness when the lease was made; that, relying thereon, the plaintiff expended a large amount of money in making valuable improvements in erecting a large building on the property; that said custom was well known in the community and greatly added to the market value of the tenants' interests, and that the railroad company faithfully observed that custom in the case of the plaintiff and permitted him to remain in possession of the property up to the time the street was opened, and that the company did not need the land for railroad purposes.

Objected to as irrelevant, immaterial and inadmissible, and in contradiction of the written lease.

The Court: You may show that the plaintiff was permitted to remain in possession of the premises up to the time of the removal or the opening of this street. It is alleged here in the argument that there was a three months' written notice given by the party of the first part to deliver up peaceable possession of the demised premises previous to the opening of this street. We will permit the counsel for plaintiff to show that he, the plaintiff, was permitted to remain in possession. As far as the balance of the offer is concerned we will sustain the objection and give the plaintiff an exception. [1]

Plaintiff proposed to prove by the general real estate agent of the railroad, that the tenancy of Daniel Shaaber from the railroad company up to the time of these proceedings was and continued to be entirely satisfactory to the company in all its particulars; that the tenancy was considered to be of special advantage to the company by reason of the freights which the company derived from the business; that the company was not needing any of the leased property for railroad or other purposes, and that there was no intention on the part of the company to terminate the tenancy as it existed; this for the

purpose of raising and strengthening the presumption of a continuance of the tenancy for an indefinite time if the city had not appropriated the property for this street.

Objected to as irrelevant, incompetent, secondary evidence, in contradiction of the lease, and including advantages subsequent to the lease. Objection sustained and exception. [2]

Plaintiff proposed to prove by Byron Kauffman that the notice which Mr. Shaaber testified was served upon him by the witness was given in pursuance of a suggestion made in a conversation between the witness and the city clerk, which came about in the following manner : That the witness having a notice from the city to the railroad company to clear the ground referred to him, he went to the office of the city clerk to ascertain what was expected from the railroad company and was informed by the city clerk that the only thing expected from the railroad company was to notify their tenants to quit, and that, in pursuance of this conversation, the witness had the notice signed by Mr. Loomis and served upon the plaintiff ; this for the purpose of showing that the notice was served on account of the proceedings begun by the city to open the street, and not from any desire of the railroad company to repossess the property which Mr. Shaaber leased.

Objected to as irrelevant, incompetent and immaterial, as the clerk could not act for the city. Objection sustained and exception. [3]

Plaintiff offered to testify that when the notice was served upon him by the agent of the company the agent explained to him that this notice was served simply because of the proceeding to open the street, because the company felt it their duty to notify their tenants on account of the notice which was served upon them to clear the street.

Defendant objected, that the inquiry was irrelevant, incompetent and immaterial, for the reason that no matter under what circumstances the notice to quit was served upon the plaintiff in this case, upon the expiration of 90 days after the service of the said notice, under the terms of the lease, the interest or estate of the plaintiff in the lease ceased. Objection sustained ; exception. [4]

The court directed a verdict for defendant, which was rendered accordingly and judgment entered thereon. Plaintiff then appealed.

*Errors assigned* were (1–4) rulings on evidence, and (5) binding instructions, quoting bills of exception and instruction.

*Isaac Hiester*, for appellant.—The jury may consider the probability of a continuance or renewal of the tenancy when the evidence shows that this circumstance increased its market value : Baltimore v. Rice, 21 Atl. R. 181, exactly our case.   In Phila. & Reading R. R. v. Getz, 113 Pa. 214, this court held that damages could not be limited to the end of a current year because the tenancy might then terminate.   Even against the landlord the lessee will be protected in the possession of the estate for any term which he was encouraged to expect : Lewis v. Effinger, 30 Pa. 281.   In our case notice by the landlord would not have been given and the tenancy would have continued indefinitely if the street had not been opened.   It was the notice from the city which destroyed the tenancy.   Appellant could have vacated the next day and proceeded for damages.   Notice from the landlord, under these circumstances, had no bearing upon the case.

Damages belong to those who are owners or lessees at the time the city unequivocally demands possession : Volkmar St., 124 Pa. 320 ; Whitaker v. Phœnixville, 141 Pa. 332.   A resolution of councils directing the commissioner of highways to notify the owner that at the end of three months they will order the opening of the street, is such a demand : Phila. v. Dickson, 38 Pa. 247.   The municipal corporation Acts of May 23, 1874, art. 14, § 55, P. L. 268 ; May 23, 1889, art. 14, § 6, P. L. 316, prescribe that damages may be assigned before entry.

If the tenancy would have ended, at all events, prior to the actual opening of the street, the tenant's damages are nominal. If there was a strong probability of a renewal or continuance of the tenancy which increased its market value at the time the city demanded possession, this may be considered in determining the lessee's damages.

*William J. Rourke*, city solicitor, for appellee.—This proceeding was under the Act of May 23, 1874, P. L. 230, and compensation must be secured through the common pleas: Spring St., 112 Pa. 258 ; Shaaber v. Reading, 133 Pa. 643. The city could not take the land until the approval of the bond,

which was after the termination of appellant's tenancy. Phila. v. Dickson, 38 Pa. 247, was decided upon the principle that the city having actually taken part in the proceedings to assess damages, and permitted confirmation, was estopped from setting up a defence that the resolution of councils under the Act of 1855 did not amount to an opening. This is as far as the court could go under the Act of 1874. Besides the Act of 1855 enabled councils to order streets to be opened on three months' notice. Not so the Act of 1874. Volkmar St., 124 Pa. 320; Whitaker v. Phœnixville, 141 Pa. 327; and Change of Grade of Plan, 28 W. N. 406; decide that damages accrue at the opening.

That the notice to quit was brought about because of the notice by the highway commissioner and conversation with the city clerk, would not continue the lease and the clerk could not bind the city.

The rule that the probability of renewal may be considered as increasing the market value cannot apply to a written lease, which by its terms determines the tenant's interest. Phila. & Reading R. R. v. Getz, 113 Pa. 214, was an oral lease from year to year, and damages were allowed there for removal of machinery. Lewis v. Effinger, 30 Pa. 281, was a perpetual lease. Baltimore v. Rice, 21 Atl. R. 181, was a tenancy from year to year, and is contrary to our decisions as stated below.

The offers of evidence were inadmissible as they would vary the written lease: Martin v. Berens, 67 Pa. 459; Hunter v. McHose, 100 Pa. 41; Thorne, McFarlane & Co. v. Warfflien, 100 Pa. 526; Eberle v. Girard Ins. Co., 4 Atl. R. 808; Rice v. Lewis, 4 Atl. R. 810; Jennings v. McComb, 4 Atl. R. 812; Irvin v. Irvin, 142 Pa. 271.

OPINION BY MR. JUSTICE GREEN, July 13, 1892.

The very grave difficulty in the way of appellant's recovery is that he has no interest or right for which damages can be allowed. The street on which his building was erected was established and laid out by the proper authorities in 1868 in accordance with the provisions of the municipal charter. It was not until the year 1878 that he leased the ground and erected his building and when he did so he was subject to the operation of the 44th section of the Act of April 26, 1864, re-

vising the charter of the city, which provides as follows: "And if any owner or owners of real estate or his or their legal representatives or assigns shall build any house or other building within the line of any street, avenue or highway as surveyed and marked on the draft or plan aforesaid, after the approval and recording of the same, such owner or owners, representatives or assigns shall not be entitled to any damages which may be caused by the removal of such house or building for the opening or widening of any such street, avenue or highway."

As appellant was bound to know the law, and is to be charged with the consequences of such knowledge, it follows that he is not entitled to any damages on account of the removal of his building. This proposition is so entirely correct that the learned counsel for the appellant concedes that the plaintiff was not entitled to any damages caused by the removal of his building.

It is equally clear that he is not entitled to any damages on account of his leasehold. By the terms of the lease he held a term of five years from November 1, 1878, which terminated on the same date in 1883. By the fifth clause of the lease he was required to deliver up peaceable possession of the demised premises to the lessor at any time after the first day of November, 1883, upon receiving three months' written notice so to do, from his lessor. The absolute determination of his lease rested with the lessor by the mere giving of three months' written notice. Such notice was given to the appellant on the 8th day of March, 1889, and thereupon all his interest in the premises ceased entirely on the 8th day of June, 1889. In point of fact the city of Reading did not enter upon the premises and proceed to take down appellant's building until about the beginning of October, 1889. Prior to their doing so they had given repeated notices to appellant to remove his building, which notices he disregarded. As the appellant's interest in the term had altogether ceased on the 8th of June, 1889, he no longer had any right or title to the possession of the premises by virtue of his lease and hence had nothing for which he could be entitled to compensation by way of damages. His remaining in possession after that day gave him no right as a tenant. At best such occupancy was by the mere sufferance

of the lessor and conferred upon him no kind of estate in the land.

The contention that there was a strong probability of a renewal or continuance of the tenancy which gave his leasehold a market value at the time the city demanded possession, is altogether untenable. His right as lessee was absolutely determined in conformity with the provisions of the lease and there could be no probability of a renewal or continuance of the tenancy possessing any market value after the notice to quit from the lessor was received. That notice was immediately followed by notices from the city authorities to remove the building and there was nothing on the part of the lessor and the city, occurring after the notice to quit, which did or could give rise even to an expectation of any continuance of the term.

In these circumstances we fail to discover that there was any possible interest of the appellant for which damages could be allowed. The proceedings both by the lessor and the city to determine the lease and open the street were in entire conformity with the law and were as expeditious as the circumstances permitted. The city followed up its notice to remove the building by positive action with no other delay than a reasonable consideration for the convenience of the appellant suggested, and no basis for an allowance of damages grows out of the fact of such brief delay. The city had the undoubted right to remove the appellant's building because he had neglected or refused to obey their notice. His lease as a source of a legal right to have compensation had ceased to exist, and we are very clear that the learned court below was entirely correct in directing the jury to render a verdict for the defendant.

The assignments are without merit and are dismissed

Judgment affirmed.