GEORGE R. EMERSON *vs.* CITY OF SOMERVILLE.

Middlesex.   March 3, 4, 1896. — May 21, 1896.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Land Damages — Public Park — Taking by Purchase — Equitable Title — Personal Property — Right of Owner of Buildings and Tenant at Will of Land to maintain Petition.*

A. was contemplating the erection of a new plant for his business, at a cost of several thousand dollars, on land in a city belonging to the B. heirs, and known as the C. farm, and was unwilling to put up the plant without an assurance that his investment and improvement should not be affected injuriously by any subsequent act of the B. heirs.   The agent of the heirs said to him, "You may go ahead, put the buildings on, and the heirs shall never take any advantage of you." He then put up his factory.   Six years later he asked for a deed of the land under and appurtenant to the buildings, and was answered, "We don't want to cut into the farm now, but when we do cut it up you shall have a chance to buy." Two years afterwards, when he was looking at a plan with reference to a contemplated addition to his buildings, the agent of the B. heirs said to him, "I should think you would want this lot," pointing out the lot containing A.'s buildings, and mentioned a price, but A. did nothing; and, in the two following years, A. made some additions to his buildings. The land was sold subsequently by the B. heirs to the city for a public park. *Held*, upon a petition by A. against the city for damages under the statute authorizing the laying out of the park, that A. had no equitable title to the land.

A tenant at will of land, upon which he has erected buildings and occupied them for the purposes of his business, and which is afterwards sold for a public park to a city, which notifies him to vacate the premises and gives him three months in which to remove his buildings, cannot maintain a petition for damages under the statute authorizing the laying out of the park, and requiring the city to pay "all damages sustained by any person or corporation in property, by the taking of any lands or by any other thing done by said city under the authority of this act," although the city, in its notice, reserves all rights, and does not admit the tenant's title to the buildings.

PETITION to the Superior Court, for a jury to assess the damages alleged to have been caused to the petitioner by the taking by the respondent city, under St. 1891, c. 311, for the purpose of a public park, of certain land with the structures thereon, known as Powder-House Farm.   Trial before *Bishop*, J., who directed the jury to return a verdict for the respondent; and reported the case for the determination of this court.   If the petitioner was entitled to an assessment of damages, the case was to stand for trial; otherwise, judgment was to be entered on the verdict.   The facts appear in the opinion.

*S. C. Darling*, for the petitioner.

*S. Z. Bowman*, for the respondent.

HOLMES, J.    This is a petition for damages, brought under St. 1891, c. 311, an act authorizing the city of Somerville to lay out a public park.    The petitioner makes his claim on the ground that he was the owner of certain buildings upon land conveyed to the city under the act by the legal owners, third persons, which buildings he says must be paid for, even if they were personal property, under the broad provisions of the act. He also takes the further ground that he had an equitable title to the land under the buildings, and to a reasonable curtilage.

Before going further, we will dispose of this last claim, which seems to us wholly without foundation.    It is enough to state the facts.    The petitioner, in 1878, was contemplating the erection of a new plant for making pickles, at a cost of about five thousand dollars, on land belonging to the Tufts heirs, the respondent's grantors, and was unwilling to put up the plant without an assurance that his investment and improvements should not be affected injuriously by any subsequent act of the Tufts heirs.    The agent of the heirs said to him, " You may go ahead, put the buildings on, and the heirs shall never take any advantage of you."    He then put up his factory.    In 1884 he asked for a deed of the land under and appurtenant to the buildings, and was answered, " We don't want to cut into the farm now, but when we do cut it up you shall have a chance to buy." In 1886, when he was looking at a plan with reference to a contemplated addition to his buildings, the agent of the Tufts heirs said to him, " I should think you would want this lot," pointing out the lot containing the petitioner's buildings, and mentioned a price, but the petitioner did nothing.    In 1887 and 1888 he made some additions to his buildings.    It needs no argument to show that these conversations did not amount to even an honorary undertaking to sell land to the petitioner.    He had made no agreement to buy, and the only promise which he had to rely upon when he put up his buildings was that in some way not defined his investment should not be lost by the heirs' taking advantage of him.    There was not so much as an oral promise to give the plaintiff the refusal of the land when the Tufts heirs were ready to sell, like the covenant which was held insufficient

in *Fogg* v. *Price*, 145 Mass. 513. Indeed, the petitioner himself argues that it would have been within the scope of the agreement to require the Tufts heirs to take the buildings off his hands at a fair price; an argument which we follow so far as it concedes that there was no definitive promise to let him have the land. It is unnecessary to go further, and to ask, if the petitioner had an equitable interest, how it has been taken. The city's vote, on May 12, 1892, to accept an offer of the Tufts heirs to sell the land, certainly was not a taking by eminent domain.

The alternative left to the petitioner is, that the buildings were personal property belonging to him, that the city took with notice of his title, and that by its acts he has sustained damage in his property which must be paid for under § 3, requiring the city to pay "all damages sustained by any person or corporation in property, by the taking of any lands or by any other thing done by said city under the authority of this act." We shall not consider all the broad questions which would have to be answered before the petitioner could recover. In some cases where there has been a taking by eminent domain, it has been held that the respondent's collateral liability was not cut down by the subsequent execution of a deed by the owner of the property taken. *Ætna Mills* v. *Brookline*, 127 Mass. 69, 71. *Cowdrey* v. *Woburn*, 136 Mass. 409, 412. *Proprietors of Mills* v. *Braintree Water Supply Co.* 149 Mass. 478, 484. *Hollingsworth & Vose Co.* v. *Foxborough Water Supply District*, 165 Mass. 186, 189. We need not decide whether the liability would be equally great upon a simple purchase and sale. *Old Colony & Fall River Railroad* v. *Plymouth*, 14 Gray, 155, 160. We need not go so far as to say that no remedy is given in the case of personal property, or that there is no compensation for detriments which by the common law apart from the statute an owner of the fee would have a right to inflict. See *Lincoln* v. *Commonwealth*, 164 Mass. 368, 375; *Stanwood* v. *Malden*, 157 Mass. 17; *Woodbury* v. *Beverly*, 153 Mass. 245. It will be enough to see exactly what the petitioner's rights were, and what the city has done.

Assuming in favor of the petitioner that he owned the buildings, and that the city took with notice, he was only a tenant at

will of the land on which they stood, and therefore was subject to the owners' right to convert his tenancy into a tenancy at sufferance by a conveyance, as well as to end it by three months' notice. Pub. Sts. c. 121, § 12. By deed dated May 28, 1892, the owners sold and conveyed the land to the city as the result of a bargain, without any exercise of the right of eminent domain. On May 25, before this deed was executed, but after the owners' offer had been accepted by the city, the petitioner applied to the city to make some arrangement with him. On July 1, 1892, notice was ordered, and on the next day served, requiring the petitioner to vacate the premises, and giving him three months from July 5 in which to remove his buildings. The petitioner vacated the dwelling-house, but had not vacated the factory buildings, when, on August 21, they were destroyed by fire, and the petitioner collected insurance upon them as his own. It is a pretty strong thing for the petitioner now to undertake to say that the buildings had been taken from him; but supposing he is at liberty to do so, he entirely fails to make out a case. It is true that the city in its notice reserved all rights, and, while it gave the petitioner leave to remove the buildings if he did so within the time named, did not admit his title. But that was not, and did not import, a taking of the buildings which the petitioner thus was given leave to remove. It was merely a saving of any legal rights which the city might have as a purchaser of the land to which the buildings were attached. We may add that we can see no ground for the argument that the statute requires the taking of the petitioner's buildings, or even refers to them, by the words, "land with the structures thereon upon which the Powder-House is located."

What else has the petitioner suffered? His occupancy has been ended after an allowance of all the time to which, in any aspect, he was entitled. That is all. Surely this is not something for which the city must indemnify him. Some rights of an owner it has over land which it has bought and paid for, although as a trustee for the public, and some of these rights it may exercise without paying a second time, even under the stricter of our diverging lines of decisions. If it were otherwise, we do not see why it would not be equally the duty of the city to pay if it gave a notice to quit at the end of one, ten, or

a hundred years, so that the statute practically would have enlarged the petitioner's estate by a gift out of the pockets of others.   We do not so read its intent.

*Judgment on the verdict.*