## In re Plot of Ground for Municipal Purposes.

*Landlord and tenant—Condemnation proceedings—Construction of sub-lease—Clause in regard to cessation of sub-lessees' title on condemnation proceedings.*

1. Under a clause in a sub-lease which provides that, "in the event that the premises demised, or any part thereof, are taken or condemned for a public or quasi-public use, this lease shall, as to the part so taken, terminate as of the date title shall vest in the condemnor," as the rights of the sub-lessees terminate as of the moment of condemnation, they have no interest which can be taken by the City and, hence, all their rights are absorbed by the principal tenant, their sub-lessor.

2. Under a clause in a sub-lease which provides that, "in the event that the premises, or any part thereof, are taken or condemned for a public or quasi-public use, then, as to such part as is taken or condemned, this lease shall, three days after the notice thereof shall be sent by the lessor to the lessee as herein provided, terminate," the sub-lessee may maintain a claim for damage sustained by the condemnation.

Exceptions to awards of board of view. C. P. No. 2, Phila. Co., June T., 1926, No. 13654.

*Joseph P. Gaffney,* City Solicitor, and *Glenn C. Mead,* Assistant City Solicitor, for exceptions.

*Joseph De Vito, Morton Z. Paul, Wolf, Block, Schorr & Solis-Cohen, Francis H. Shields, Frazier & Frazier, David Levinson, James J. Breen, Witkin & Egan* and *E. Furth,* contra.

STERN, J., April 13, 1927.—The City of Philadelphia has filed exceptions to the award of the board of view to nine sub-tenants of the premises at 13th and Filbert Streets, which property was appropriated by the City under Ordinance of Council dated July 7, 1926, and bond filed Aug. 19, 1926. The property in question was owned by Ely K. Selig, and the award made to him by the board has not been appealed or excepted to by either party. Selig, by lease dated Oct. 8, 1918, leased the entire property to United Cigar Stores Company of America for the term beginning Jan. 1, 1920, and ending Dec. 31, 1941. The board made an award to the United Cigar Stores Company of America for the taking of its leasehold interest, and that award also has not been appealed nor excepted to by either the City or the company.

The United Cigar Stores Company of America from time to time made various sub-leases of the premises, and these sub-tenants are involved in the present proceedings before the court, the City having filed exceptions to awards made to them by the board of view. These exceptions, so far as they concern the sub-tenancies of George H. Scholl, Joseph Engel, Ferd G. Lopez, Morris Fox and Phil Lewis, are based upon the fact that their sub-leases contain the following clause: "In the event that the premises demised, or any part thereof, are taken or condemned for a public or quasi-public use, this lease shall, as to the part so taken, terminate as of the date title shall vest in the condemnor, and rent reserved shall abate proportionately as to the part so taken, or shall cease if the entire premises demised be so taken."

The City of Philadelphia contends that, by virtue of the above-quoted clause, these sub-leases terminated as of the date of the condemnation with the same force and effect as if that date had been specifically written into the lease at the time of its original execution, and, therefore, that the City was not taking from these sub-tenants anything of value.

In one aspect of the case the City of Philadelphia is not concerned in regard to the distribution of the total award as between the owner, the lessee and the sub-lessees. The City pays for the value of the property, and presumably

the owner's interest is diminished by the value of the lease, and the lessee's interest by the value of the sub-leases. The cutting up of the title into leasehold and remainder interests should not make the sum of the parts greater than the whole. The matter, therefore, is one primarily of a proper division of the award as between the parties in interest, but since, under our practice, the awards are made by the City separately to each claimant, it is important from the City's standpoint that each receive the amount only to which it is entitled and that there should be no duplications in payment as among the parties in interest. A reading of the record of the case would indicate that the United Cigar Stores Company of America made (and was paid) its claim upon the basis of its full lease, and it is the City's contention that if additional payments were made to the sub-tenants, they would be receiving a duplication of what was already paid to (and accepted by) the principal lessee; in other words, the City's theory is that these sub-tenancies expired upon the date of the condemnation, leaving the United Cigar Stores Company of America in full possession of the entire tenancy at that time.

In the opinion of the court, the entire question resolves itself into a proper construction of the clause quoted, in order to ascertain the intention of the parties to the sub-leases as to their respective rights to damages in case of condemnation. Viewed from this standpoint, the court is of opinion that the clause in question was inserted into the sub-leases for the very purpose of securing to the principal tenant the right to an award for its entire tenancy, without any right to the sub-tenants to claim for any portions of their leasehold interests that would have remained had it not been for the clause so inserted. The claimants contend that the condemnation in itself would have destroyed all interests in the property, and, therefore, the statement in the leases to that effect is mere surplusage; but it seems to the court that this clause was inserted for a purpose and must be construed as having some meaning, and that the fair construction is that, as between the parties, and irrespective of and additional to the fact that from the standpoint of the City the leases were brought to an end by the City's action, the leases were also to be considered thereupon ended between the parties as bearing upon the question of their respective titles thereafter and, consequently, of their relative rights to awards from the City of Philadelphia.

This is the view taken by Mr. Justice Holmes, when he was Chief Justice of the Supreme Court of Massachusetts, in Goodyear Shoe Machinery Co. v. Boston Terminal Co., 176 Mass. 115. In regard to a similar clause in a lease, Mr. Justice Holmes there said: "Of course, any valid taking of the whole premises would put an end to the lease (O'Brien v. Ball, 119 Mass. 28), and, therefore, the provision quoted must not be construed too literally in its application to the present case. The object is that which is pointed out in Munigle v. Boston, 3 Allen, 230, 232, and the meaning is that the landlord can terminate the right of the tenant to share in the damages. See, further, Burbridge v. New Albany & Salem R. R., 9 Ind. 546."

The same view has been taken in New York, as illustrated in the Matter of Mayor, etc., of New York, 168 N. Y. 254, where a clause, somewhat weaker and vaguer than the present one, was held to terminate the lease eo instante with the condemnation, and, therefore, to deprive the lessee of any claim to damages from the city arising from the taking of the property; and this case was followed in the Matter of City of New York, 124 App. Div. (N. Y.) 465 (see pages 474-475).

The chief case relied upon by counsel for the sub-tenants is that of Boteler v. Philadelphia & Reading Ry. Co., 164 Pa. 397; but that case would seem to

be easily distinguishable, because, while the lease there in question provided that in case a railroad should be located over the demised premises the lease should terminate and end immediately upon the premises being taken for railroad purposes, it further stipulated that "nothing herein contained shall, however, prevent the lessor or lessees from recovering damages for such taking from the corporations or other persons taking."

It is argued by the claimants that the City of Philadelphia should not be allowed to take advantage of this clause in leases to which it is not a party. This, however, is a complete misapprehension of the point. The City need pay only for what it purchases under its condemnation proceedings, and the clause in question determines the amount of the lessees' interests, just as the duration of the terms expressed in the leases and all their other clauses and provisions are relevant and essential for the determination of the extent and value of the leasehold interests which the City is acquiring and, therefore, the price which should be paid therefor.

We conclude, therefore, that by the lease agreements between the principal tenant and these sub-lessees the latters' rights terminated as of the moment of the condemnation, and they, therefore, had no interest which could be made the subject of purchase by the City, but that all their rights thereupon were absorbed by the principal tenant, the United Cigar Stores Company of America, which presumably received compensation accordingly from the City of Philadelphia and to the satisfaction of both it and the City, since neither party appealed from that award. These sub-tenants, having no remaining leasehold interests, are entitled to no damages: Shaaber v. Reading City, 150 Pa. 402.

The exceptions filed to the awards to four of the sub-tenants, namely, Stanley Company, Inc., Frank Labrosciano, Jacob Needleman and Linton's Lunch, involve the construction of a somewhat different clause than that contained in the case of the other sub-tenants above referred to. The subleases to Stanley Company, Inc., Linton's Lunch and Labrosciano provided as follows: "In the event that the premises, or any part thereof, are taken or condemned for a public or quasi-public use, then, as to such part as is taken or condemned, this lease shall, three days after notice thereof shall be sent by the lessor to the lessee, as herein provided, terminate and rents reserved shall abate proportionately." The words "as herein provided" evidently refer to another clause in these leases which details the method by which notice shall be given in certain contingencies, namely: "In case the lessee fails or omits to perform any of the covenants or conditions herein contained, the term of this lease shall expire three days after notice in writing of any such failure or omission shall be sent by lessor to the lessee by mail or otherwise, addressed to demised premises, and this lease shall cease and come to an end in the same manner and to the same effect as if that were the date originally fixed herein for the expiration of the term." Jacob Needleman was a sub-tenant under Frank Labrosciano, and, therefore, his claim is governed by the same principles as affect Labrosciano under the latter's lease from the United Cigar Stores Company of America.

It will be seen from the clause now under consideration that these subtenancies were not to terminate automatically by the fact, and as of the date, of the vesting of title in the condemnor by reason of the proceedings in eminent domain, but only if notice of the condemnation should be sent by the lessor to the lessee and three days after such notice was sent. This is equivalent to saying that, instead of an automatic and fixed termination, the lessor

was to have an option to determine the lease, which option it was to exercise by notifying the lessee to that effect. Therefore, as between the parties to these leases, their respective rights (irrespective of the action and rights of the City) were dependent upon action to be taken by the lessor, if the latter chose to take such action. This would seem to bring these cases within the principle of Shipley *v*. Pittsburgh, Carnegie & Western R. R. Co., 216 Pa. 512. In that case, at the time of the condemnation, the tenancy had sixteen months more to run, but there was a clause in the lease giving to the landlord an option to terminate the lease at any time upon ten days' notice. It was there held that the tenant was entitled to recover damages as upon the basis of the full sixteen months' unexpired duration of his term, on the theory that, whatever notice might have been given after the condemnation, the appropriation of the tenant's interest had been completed by the condemnation and the status of the parties thereby fixed. This case is referred to in the elaborate and comprehensive opinion of the present Chief Justice in Iron City Automobile Co. *v*. City of Pittsburgh, 253 Pa. 478, where it was held that the mere presence of a provision in the lease that the landlord has the right to dispossess the tenant at any time upon a short notice, while an element for consideration, will not defeat the right of recovery by the tenant if he proves a depreciation in the value of his leasehold interest, Mr. Justice Moschzisker saying (page 496) : "In valuing the remainder of a term, while the fact that the landlord has the right to dispossess the tenant at any time upon a short notice may be an element for consideration, yet, when no such notice has been given, the mere presence of this provision in the lease will not absolutely defeat the right of recovery by the tenant, if he is able to prove a depreciation in the value of his leasehold interest, whatever it may be."

At the time of the condemnation in the present case the notices required to terminate these sub-leases had not been given, as, of course, they could not have been given from the very fact that they were to be notices of condemnation, and, therefore, could only be subsequent thereto. In fact, the evidence shows that the required notices were given by the United Cigar Stores Company of America on Sept. 7, 1926, which was about nineteen days after the City had acquired title by filing its bond. While, therefore, the presence of such a clause in these sub-leases would seem as a practical matter to destroy almost, if not wholly, the value of these sub-tenancies at the time of condemnation (since, in case of condemnation, it was more than likely that the Cigar Stores Company would give such notices), nevertheless, there was no absolute certainty that such notices would be given as between the parties, and in fact there was an appreciable interval between the time of the condemnation and the date when they were given, as above stated. For this reason, as a matter of theory at least, it would seem to the court that the City's exceptions in these particular cases cannot be sustained as a matter of law, but that there might be some damage, as Mr. Justice Moschzisker indicated in the case cited, however slight, which would have to be determined by a jury upon appeal from the awards.

For the reasons thus indicated, the first, fourth, sixth, seventh, eighth and tenth exceptions filed by the City of Philadelphia to the awards of the board of view are sustained (covering the cases of Scholl, Engel, Lopez, Fox and Lewis). The City's third, fifth, ninth and eleventh exceptions (covering the cases of Stanley Company, Inc., Labrosciano, Needleman and Linton's Lunch) are overruled, without prejudice to the rights of the City to prosecute the appeals filed by it in those cases.