No. 16,055.

STONE *v.* LERNER ET AL.
(195 P. [2d] 964)

Decided July 6, 1948.  Rehearing denied July 26, 1948.

Mr. PHILIP HORNBEIN, Mr. PHILIP HORNBEIN, JR., for plaintiff in error.

Mr. LOUIS G. ISAACSON, for defendants in error.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

THE parties to this proceeding are here in reverse or-

der of their appearance in the trial court. Plaintiffs Lerner, in a forcible entry and detainer action, recovered judgment in a justice of the peace court against defendant Stone. In a trial in the county court, they were likewise successful. The losing defendant seeks a reversal of the judgment.

The real estate involved is a business property at 1430 Larimer street, Denver, occupied during the period involved in this litigation by the Capitol Fixture and Supply Company. This company originally was a partnership formed May 13, 1943, and consisted of three members, namely: S. G. Lerner, M. S. Schwartz, and Herman Goalstone (also known as Stone, plaintiff in error here), and each had an undivided one-third interest in the company. July 7, 1944, this partnership acquired a lease of the premises which by its terms expired September 30, 1947. In the same year this lease was executed there were some negotiations regarding the purchase of the building, and at that time a price of $25,000 was quoted plus $1,500 commission. Lerner and Stone were in favor of purchasing the property, but nothing further was done because the third partner, Schwartz, apparently was not interested in purchasing. After a "buy and sell" proposition, under date of August 11, 1945, had been made in accordance with the partnership agreement, Lerner sold his one-third interest in the partnership for $16,000, and the three-party partnership was dissolved. The two remaining partners, each owning a one-half interest, continued the business nine months and until May 1946 when Stone bought Schwartz' half interest for $40,000. Having thus become the sole proprietor, Stone, one month later, in June 1946, organized a Colorado corporation under the same name as the former partnership, in which he appears to have owned all of the stock except for directors' qualifying shares, which corporation has since continued to conduct the business of the earlier companies. In the same month when this firm was incorporated, Sara Lerner, Abish

Klurman and Ethel Lerner purchased the Larimer street real estate where the company was doing business. The two women purchasers appear to be wife and sister-in-law respectively of defendant. Later the three transferred the property to defendants in error, S. G. Lerner and his brother Eliot Lerner. On July 24, 1947, a little over one year after their family had acquired the real estate, the Lerners served upon Stone written notice to vacate upon the termination of the lease September 30, 1947. Stone's refusal to do so resulted in the present legal proceeding.

Stone's ground for not vacating, and upon which his defense is based, is the provisions of the contract executed by Lerner when he sold his interest in the partnership. This contract reads in part as follows:

"That whereas, the parties hereto have heretofore been copartners in the business known as 'The Capitol Fixture and Supply Company' conducted at 1430 Larimer Street, Denver, and pursuant to the partnership agreement between said parties dated May 13, 1943, and

"Whereas pursuant to the terms of said partnership agreement a buy or sell notice was given by the party of the first part to each of the parties of the second part; and

"Whereas the parties of the second part have exercised their option to purchase the interest of the party of the first part in and to said partnership business,

"Now, therefore, in consideration of the mutual covenants herein contained, it is agreed between the parties hereto as follows:

"1. The party of the first part does hereby, for and in consideration of the sum of Sixteen Thousand ($16,-000.00) Dollars, paid to him by the parties of the second part, receipt of which is hereby confessed and acknowledged, bargain and sell, and by these presents does assign, sell and transfer unto the parties of the second part, their heirs, executors, administrators, successors or assigns, all of his undivided one-third interest in and to

the said partnership business, including his undivided one-third interest in all of the furniture, equipment and furnishings of said business, stock of merchandise of said business, accounts receivable of said business, moneys in said business, his interest in the lease on the premises known as 1430 Larimer Street, and also his interest in the lease on 1443 Larimer Street, Denver, Colorado, and all of his right, title and interest in and to any and all of the assests of whatsoever kind or nature, of the said The Capitol Fixture and Supply Company.

"2. It is agreed that the parties of the second part shall and do assume and agree to pay all of the outstanding debts and obligations of the said partnership business, and to perform all of the covenants of the leases upon the said premises, and to perform all other outstanding contracts and agreements required to be performed by said partnership; and the parties of the second part agree to save and hold harmless the party of the first part against any claim or claims that may arise by reason of the aforesaid debts, obligations or covenants, or of any other claims, except those mentioned in paragraph 3 hereof.

"3. The party of the first part hereby warrants and represents that he has incurred no debts, nor contracted any obligations, nor has he incurred any liability in the name of the partnership, or for which the partnership would be liable, other than such debts, obligations, or liabilities as are disclosed in the books of the partnership, or of which he has advised the parties of the second part, or either of them; and the party of the first part agrees to save and hold harmless the parties of the second part on account of any claims that may be made against said partnership because of any debt, obligation or liability which the party of the first part incurred in the name of the partnership or which the partnership has become liable for on account of any act of the party of the first part, as to which the party of the first part

has failed or neglected to inform the parties of the second part or either of them.

"4. The parties of the second part agree to prepare federal and state partnership income tax returns for the partnership business from January 1, 1945 to this date, and to supply the party of the first part with a copy thereof. It is agreed that each of the parties hereto shall pay their individual income taxes both federal and state on the income received from said partnership business.

"5. The 1945 general taxes and all other tax obligations shall be considered an obligation of the partnership, and is hereby assumed by the parties of the second part.

"6. It is agreed that the partnership heretofore existing between the parties hereto be, and the same is, hereby dissolved, and that this agreement constitutes a full and complete accounting and liquidation of said partnership business, and, excepting as herein otherwise reserved, the party of the first part acknowledges that he has no claim or demand of whatsoever kind or nature against the parties of the second part, and, except as herein otherwise reserved, the parties of the second part acknowledge that they have no claim or demand of whatsoever kind or nature against the party of the first part."

It is Stone's contention that, when Lerner sold his undivided one-third interest in the partnership, among the assets of the partnership, in which he had an interest and which was therefore included in the sale, was the good will of the partnership, which at that time was carried on the partnership balance sheet at a value of $5,000; that the good will of a business includes the right to continue to do business at the "same old stand" and that when Lerner sold his interest in the good will of the business there was an implied contract not to interfere with the right of the partnership to continue to occupy the same premises or to interfere with the leasing of the property to the partnership. It should be

added that preliminarily to the execution of the contract the written "buy & sell" notice signed by Lerner and the written acceptance of Lerner's offer to sell both mentioned the item of good will. That it was not mentioned specifically in the resulting contract seems to have been an oversight, as both parties testified that Lerner was selling all of his interest in the partnership including the good will.

Defendant's case is grounded upon *Fine v. Lawless,* 139 Tenn. 160, 201 S.W. 160, L.R.A. 1918 C, p. 1045. In that case it was held that an injunction would lie to prevent one who, in selling a business, sells the good will and assigns the leasehold of the premises where the business is conducted, from securing a renewal of the lease at the expiration of the term to the injury of the assignee. Counsel quotes at length from this authority, and the case apparently was the basis of the argument in the county court. The theory announced in the Tennessee case is that the tenant in possession has what is called an "expectancy of renewal." That this "expectancy of renewal," although from its very terms not a definite chose in action, yet by usage has come to be looked upon as a thing of value and accorded the dignity of a property right. In this case, Lawless Brothers were held to have improperly interfered with Fine's "expectancy of renewal" when, after having sold all of their business to Fine, including the good will, they negotiated with the landlord of the property where the business was conducted, and prevailed upon him, on the termination of the lease, to grant Lawless Brothers a renewal of the lease rather than Fine.

So far as we have been able to ascertain, no case similar to that of *Fine v. Lawless* has been decided by the appellate courts of our state. We doubt if the Colorado authorities, which counsel have cited, bear specifically on the point here involved. *McCourt v. Singers-Bigger,* 145 Fed. 103, a case arising in Colorado, like *Consumers Company v. Parker,* 227 Ill. App. 552, and *Pikes Peak*

*Company v. Pfuntner,* 158 Mich. 412, 123 N.W. 19, was a case of one who simultaneously as a director, stockholder and general manager of a corporation secured for his own benefit a lease on a property in which his corporation was interested. In each case the court ruled that the director held in trust for the corporation.

In *Barrows v. McMurtry Mfg. Co.,* 54 Colo. 432, 131 Pac. 430, we stated the general principle that good will is a property right, and, interpreting a contract in which the person selling out the business had agreed not to engage in a competing business, we held that such a contract was not invalid as being in restraint of trade.

No forcible entry and detainer case has been cited where the holder of the legal title has been denied the right of possession; in fact no case involving forcible entry and detainer has been cited by counsel for defendant. We have held, in *Beman v. Rocky Ford Nat. Bank,* 100 Colo. 64, 65 P. (2d) 708, that under the statutory precedure for forcible entry and detainer a court is permitted to consider only the right to possession of property, and we cited that decision with approval in *Hendron v. Bolander,* 101 Colo. 414, 74 P. (2d) 706. Section 13 of chapter 70, volume 3, '35 C.S.A., describing the type of answer to be made by the defendant in a forcible entry and detainer suit, reads as follows: "The answer of the defendant shall be in writing and verified by the oath of the defendant, his agent or attorney, and shall set forth all the substantial facts upon which he relies, entitling him to the possession of the property described in plaintiff's complaint, and shall either specifically admit or deny all of the material facts set forth in such complaint." See, also, *Davis v. Holbrook,* 25 Colo. 493, 55 Pac. 730.

Furthermore, no case is cited wherein the equitable defenses asserted in *Fine v. Lawless, supra,* were held to prevail against the owner of the fee title, and the court expressly ruled that the landlord's right to select or refuse a tenant shall remain unimpaired, and that a

renewal of Fine's tenancy could not be forced upon the landlord, if the latter did not desire it. The ruling of the court was that Lawless Brothers were not in a position to bargain for a renewal of the lease; but the landlord's right to renew the lease, or to refuse to renew it, or to make a new lease (except to Lawless Brothers) remained unimpaired.

In none of the cases which apply the doctrine announced in *Fine v. Lawless* is there a determination of the amount of the rent on renewal of the lease. In the instant case, if we adopt defendant's theory, the courts would have to determine not only the amount of the rental, but the length of the term of the lease as between a lessee who was asserting a right to continued possession and a lessor who was standing on his right not to have to renew. We doubt the necessity or wisdom of placing this burden upon a trial court, especially when there seems to be no authority for so doing.

What we have said so far applies to the second specification of plaintiff in error, namely, that "the court erred in granting judgment to plaintiff." In passing it may be remarked that we doubt whether this specification complies with rule 111 (f) of our Rules of Civil Procedure. *Carter v. City and County of Denver*, 114 Colo. 33, 160 P. (2d) 991. It would seem that that specification would be faulty even under the earlier rules. *Smookler v. Nicoll Bros. Oil, Inc.*, 100 Colo. 587, 69 P. (2d) 306; *Buchanan v. Burgess*, 99 Colo. 307, 62 P. (2d) 465; *Newton Lumber Co. v. Oberto*, 99 Colo. 430, 63 P. (2d) 456.

The first and only other specification of error is that, "The court erred in denying defendant a jury trial." It will be noted from what we have hereinbefore stated, that there would appear to be no dispute as to the facts in this case and that the defenses upon which counsel rely are equitable in nature. In *Dohner v. Union Central Life Ins. Co.*, 109 Colo. 35, 121 P. (2d) 661, defendant in his answer to a statutory unlawful detainer

action asserted an equitable defense. We there ruled as follows: "In *Weir. v. Welch,* 71 Colo. 66, 203 Pac. 1100, an unlawful detainer action, where, as here, an equitable defense was interposed, we held that section 191, above mentioned, was without application, and that the determination of the equitable issue was for the court and not a jury. See, also, *Davis v. Holbrook,* 25 Colo. 493, 55 Pac. 730. In refusing defendant's request for a jury trial the court committed no error."

The judgment is accordingly affirmed.