No. 16,598.

PETRY ET AL. *v.* CITY AND COUNTY OF DENVER.
(233 P. [2d] 867)

Decided May 7, 1951. Rehearing denied July 2, 1951.

Messrs. IRELAND, IRELAND, STAPLETON & PRYOR, for plaintiffs in error.

Mr. ABE L. HOFFMAN, Mr. ALVIN WEINBERGER, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE JACKSON delivered the opinion of the court.

THE City of Denver filed its complaint in forcible detainer under the statute, against the Petry partnership and others, alleging ownership of certain described property located in the area of its proposed Valley Highway now in course of construction. It also alleged that the Colorado and Southern Railway Company, from which it had acquired title, had previously executed a lease to The Summit Grain Company, and that defendant Petry partnership was in possession by virtue of being an assignee of the grain company. It also is stated in the complaint that on or about February 20, 1946, the railway company, as lessor, assigned all of its lessor's right to plaintiff. Under the lease, being from year to year, entered into by the respective predecessors in interest of the parties to this litigation the lessee was permitted to hold the premises from November 15, 1942, until termination according to its terms, among which are the following:

"It is further agreed that either party may terminate this lease at any time upon giving the other party thirty (30) days' written notice of such termination; provided, however, that rent shall be paid by said Lessee to the date of termination fixed by said notice; and if rent has been paid in advance, the proportionate amount for the unexpired term shall be returned to the Lessee."

"Upon the termination of this lease, by notice as aforesaid, or otherwise, the Lessee shall at once remove from

the premises all structures and property not belonging to the Railway Company and in case of failure so to do the Railway Company may tear down or remove the same at the expense of the Lessee without any liability to damages therefor in any respect whatsoever."

The city alleged termination of the lease on February 25, 1950, by serving, January 25, 1950, on defendant partnership written notice, quoting the above-mentioned paragraphs and demanding vacation by February 25. The notice ended with the statement: "A proportionate amount of rent for the unexpired term will be returned to you." There was a further allegation of unlawful holding over by defendant partnership after termination of lease, and also the statement that there were on the property certain structures and improvements not belonging to the city as lessor and that defendant partnership had failed and refused to remove them under the terms of the lease. In addition to the usual prayers, the city requested an order requiring defendants to remove all structures and improvements on the property now belonging to plaintiff.

Defendants moved to dismiss on the ground that the city acquired title to the land for a public purpose, and that it could not take the structures and other buildings located thereon without just compensation.

Upon denial of this motion, answer was filed in which defendants admitted: (1) the city's ownership of the land; (2) execution of the November 15, 1942, lease between the railway company and the grain company; (3) the provisions for termination as described; and (4) service of notice of termination as alleged. They denied: (1) Termination of the lease by the city on February 25, 1950; (2) defendant's possession was unlawful; (3) refusal by defendant to remove the improvements in accordance with the terms of the lease; (4) the partnership was guilty of a forcible detainer; and (5) that the railway company, as lessor, assigned its

lessor's right under the lease agreement to plaintiff and demanded strict proof on this fifth point.

In the answer it was affirmatively alleged: (1) the grain company assignment to the Petry partnership February 7, 1944; (2) its acceptance by the lessor railway company; and (3) simultaneous execution by the grain company of its bill of sale to Petry covering the buildings and fixtures located on the leased property. It also was alleged in the answer that at the time of the transfer of title to the land from the railway company to the city subject to the lease, defendant partnership "was the owner and in possession of said buildings equipped with certain fixtures of the value of not less than thirty thousand dollars ($30,000), all of which buildings and fixtures were, at the time of the appropriation of said land for public purposes by plaintiff, a part of said real estate and could not and cannot be removed from said premises without substantial damage * * *." Another allegation was that a city ordinance had authorized the mayor to convey to the railway company certain lands in the city in exchange for $25,000 cash, together with conveyance by the railway company to the city of certain other lands including the tract in question; that this ordinance directed the land herein involved to be transferred to the city subject to the lease, and the above outlined transaction was completed in compliance with the ordinance which provided that the city, at its own cost and expense, would secure and clear all access rights required for the Valley Highway. Defendant partnership further alleged that it was in lawful and rightful possession of the buildings and fixtures, and that plaintiff was not entitled to possession until defendant had been compensated by plaintiff or provision made therefor according to law; that plaintiff has no authority to take possession of the real estate and the structures and buildings thereon until defendants have received just and full compensation, or until the city has proceeded under the eminent domain statutes of this state.

After defendants renewed their motion to dismiss the complaint of the city, the latter filed a motion for judgment on the pleadings. The trial court dismissed defendants' motion and granted the city's motion. It is the reversal of this judgment on the pleadings that defendants now are asking.

The trial court held that under the statute providing for bringing a forcible entry and detainer action, the only issue to be determined is the right of possession, citing *Stone v. Lerner,* 118 Colo. 455, 195 P. (2d) 964, 4 A.L.R. (2d) 97, and that when defendant partnership recognized the lease the right to possession by the city is clear.

Defendant partnership takes the position that it "entered the property rightfully and with right to the possession thereof and retains possession rightfully and lawfully. We have none of the elements in this case of unlawful detainer, as set forth in section 4 of said chapter 70 ['35 C.S.A.] because there is no relationship of landlord and tenant. The defendant partnership has an ownership separate and distinct from that of plaintiff city which can only be taken for a public purpose on payment of just compensation."

Counsel reach this conclusion by the following reasoning: "The acquisition by the city of the railroad's interest in the land evidenced an appropriation by the city for a public purpose. The effect of this action, as shown by the Allen Street and Ladue cases, cited supra, [*Allen Street and First Avenue v. Borough of Manhattan, City of New York,* 256 N. Y. 236, 176 N.E. 377; *City of Ladue v. St. Louis Public Service Company* (Mo. App.) 168 S.W. (2d) 966] is to terminate any outstanding leases and agreements between the former landlord and tenant, and thus the naked land and the buildings thereon comprise a single parcel of real estate, the ownership of which is vested in both the city and the defendant as tenants in common, their interests being

proportional to the respective values of the naked land and the buildings."

Reliance also is placed upon *Sheehan v. City of Fall River*, 187 Mass. 356, 73 N.E. 544, and *Jackson v. State*, 213 N. Y. 34, 106 N.E. 758:

All these cases cited by counsel for the partnership were condemnation proceedings brought by a city or state having no ownership in the property involved, in which both a landlord and a tenant had their respective interests. The substance of the holding in those cases was that the tenant had a compensable interest in the property being taken by condemnation as well as the landlord, and that in fixing the amount of compensation for the property being condemned there should be a finding as to what proportions the landlord and the tenant respectively were entitled.

But even in cases involving condemnation, it has been recognized that the value of some tenancies is merely nominal. Thus, in an annotation in 152 A.L.R. 311, the following statement appears:

"The test by which to answer the question under consideration in this situation was said in *Brooklyn Eastern Dist. Terminal v. New York* (CCA 2d) [139 F. (2d) 1007] to be whether the right with respect to real property taken in condemnation is, or is not, so remote or incapable of valuation that it will be disregarded in awarding compensation."

\*      \*      \*

"The test as above defined seems also to be supported by the fact that there are recognized estates in land such as a tenancy at will or at sufferance, or even a tenancy from month to month, the owners of which are not entitled to compensation where the land is taken for public use, apparently on the ground that the right is not capable of valuation or is too insignificant to be taken into consideration in determining the compensation for the land appropriated."

In the present case the city is not proceeding as a

condemnor of property in which the landlord and tenant each have an interest, but, as the owner of real estate subject to a lease terminable at will on thirty days' notice, seeks to exercise the method provided for such termination. After the tenant has received such notice, and acknowledges its receipt, but still persists in retaining possession, the city brings this action under the statute. It is true, as alleged by counsel for defendant partnership, that it "entered the property rightfully and with right to the possession," but we find no support for counsel's further statement that the partnership "retains possession rightfully and lawfully," nor for their position that, because of the city's intention to use the land for a public purpose, thereby the partnership has greater rights in the improvements which the city is seeking to have removed than if the city had acquired the land as an investment, or as any private land owner.

In *Shaaber v. Reading City*, 150 Pa. 402, 24 Atl. 692, it was held, as stated in the syllabus in the Atlantic Reporter, that: "A lessee, whose right has been terminated by notice to quit, and who is holding over merely by sufferance, has no interest in the leasehold on which he can recover for removal of a building thereon to make way for the opening of a street; nor can it be said that there is such a strong probability of renewal of the lease as to give him an interest, where nothing has been said or done by the lessor, after notice to quit, which could give rise to any expectation of renewal."

In *Emerson v. City of Somerville*, 166 Mass. 115, 44 N.E. 110, where the city of Somerville purchased with notice of plaintiff's tenancy at will and gave the statutory three months' notice to plaintiff to quit and to remove his buildings, and where plaintiff vacated his dwelling but before the factory buildings were vacated they were destroyed by fire and plaintiff collected the insurance money, it was held, as stated in paragraph 2 of the syllabus in the 44th Northeastern Reporter, that the defendant city: " * * * was not liable as for the

taking of the buildings, under the public park act (St. 1891, c. 311, §3), requiring the city to pay 'all damages sustained by any person or corporation in property, by the taking of lands, or by any other thing done by said city under the authority of this act.' "

A portion of the court's opinion in that case, written by Mr. Justice Holmes, reads:

"The city's vote on May 12, 1892, to accept an offer of the Tufts heirs to sell the land, certainly was not a taking by eminent domain.

\*       \*       \*

"Assuming, in favor of the petitioner, that he owned the buildings, and that the city took with notice, he was only a tenant at will of the land on which they stood, and therefore was subject to the owners' right to convert his tenancy into a tenancy at sufferance by a conveyance, as well as to end it by three months' notice. Pub. Sts. c. 121, §12. By deed dated May 28, 1892, the owners sold and conveyed the land to the city as the result of a bargain, without any exercise of the right of eminent domain. On May 25th, before this deed was executed, but after the owners' offer had been accepted by the city, the petitioner applied to the city to make some arrangement with him. On July 1, 1892, notice was ordered, and on the next day served, requiring the petitioner to vacate the premises, and giving him three months from July 5th in which to remove his buildings. \* \* \*

"What else has the petitioner suffered? His occupancy has been ended after an allowance of all the time to which, in any aspect, he was entitled. That is all. Surely this is not something for which the city must indemnify him."

██ To summarize, it is not contended by counsel for the partnership that the railway company any time during the period of its ownership of the land could not lawfully have terminated the partnership tenancy by giving the thirty-day notice. Nor does the right of the

city, as successor in interest of the railway company, to terminate the lease seem to be questioned except for the fact that it acquired the land for a public purpose, i.e., to be used as a part of the Valley Highway. The fact that the city would have had to condemn the property did it not already own it, appears to be the only basis for the argument that it must now resort to condemnation proceedings in respect to a tenancy which in any other situation it would have a clear right to terminate. On theory, we see no reason for making any exception here; nor does there appear to be any authority generally for making any such distinction, but quite the converse. And in this jurisdiction, in order to adopt counsel's contention, an exception would also have to be engrafted on the unlawful detainer statute, proceedings under which we have consistently held involve solely the right to possession. Finally, as we have seen, even if condemnation proceedings were applicable, the tenancy, being terminable at will upon thirty days' notice, and such notice of termination having been given, is of such small estate that the rule de minimis could well apply.

The judgment is affirmed.

MR. JUSTICE HILLIARD dissents.

MR. JUSTICE HILLIARD dissenting.

Originally, I concurred in an opinion affirming the judgment. On further consideration, however, I am constrained to believe that I proceeded in error. First of all, as seems clear, the trial court, proceeding thereto notwithstanding the pleadings tendered a material issue of fact for determination, erroneously granted a motion interposed by defendant in error for judgment on the pleadings. That alone, as I conceive, should move us to order reversal of the judgment. See, *Neuhaus v. Colorado Herald Publishing Co.*, 112 Colo. 371, 149 P. (2d) 656, and cases cited there. Moreover, as my present

study convinces, the remedy invoked by defendant in error (forcible detainer), does not lend itself readily to judicial inquiry relative to the claim of plaintiffs in error to recover the value of property identified as "annexations to the land," of which, as said, the judgment below worked deprivation in a large sum.

I would reverse the judgment, and suggest to the parties that they consider with the trial court the possibility of so broadening the issues that the claim of plaintiffs in error to the property mentioned may be tried, and, if resolved favorably, the value thereof judicially ascertained and adjudged. Failing which—and the difficulty necessarily to attend any effort to engraft the issue invoked in a forcible detainer action is not of easy solution—the case should be dismissed without prejudice, and defendant in error relegated to an action in condemnation, a remedy necessarily not so restricted.