IN THE MATTER OF THE APPLICATION OF BESSIE S. AKANA, A DEFENDANT IN CIVIL NO. 3234, TERRITORY OF HAWAII *v.* SAMUEL RENNY DAMON, HERMAN VALDEMAR VON HOLT, DAVID HEBDEN PORTEUS, AND JOHN EDWARD RUSSELL, TRUSTEES UNDER THE WILL AND OF THE ESTATE OF SAMUEL M. DAMON, DECEASED, ET AL., ON BEHALF OF HERSELF AND OTHERS SIMILARLY SITUATED, FOR A WRIT OF MANDAMUS DIRECTED TO ALBERT M. FELIX, THIRD JUDGE OF THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT, TERRITORY OF HAWAII.

No. 4066.

ARGUED MARCH 10, 1958. DECIDED APRIL 11, 1958.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

416 

OPINION OF THE COURT BY MARUMOTO, J.

This is a petition for mandamus filed by Bessie S. Akana, on behalf of herself and certain tenants of Damon Tract similarly situated. Bessie S. Akana and other persons similarly situated will be referred to in this opinion as petitioners.

The petitioners are tenants of portions of the land sought to be condemned by the Territory of Hawaii for the expansion of the Honolulu International Airport in an eminent domain proceeding filed in the circuit court of the first circuit, entitled, "Territory of Hawaii, by Herbert Y. C. Choy, its Attorney General, Plaintiff, v. Samuel Renny Damon, et al., Defendants," being Civil No. 3234 of the records of the court. Each of the petitioners held a one-year lease from the Trustees under the Will and of the Estate of Samuel M. Damon, Deceased, but at the time of the commencement of the eminent domain proceeding the original term had expired and had been succeeded by a quarterly tenancy. Each lease provided that upon the expiration of the original term the lessee shall have the right to one or more successive quarterly extensions, such right to be terminable upon written notice of refusal of extension given by the lessors to the lessee at least thirty days before the expiration of the original term or the extended term; that upon the determination of the lease, the lessee may remove the buildings standing on the premises; that if the premises should be taken or condemned by lawful authority, then the interest of the lessee in the premises shall cease; that the lessee shall not by reason of such taking be entitled to any claim against the lessors or others for compensation for the leasehold interest or for the taking of any land or improvements thereon other than improvements erected by the lessee; and that all compensation representing the value of the improvements erected by the lessee shall be payable to the lessee.

The Territory filed its original complaint in Civil No. 3234 on September 13, 1957, in which it joined the Trustees of Damon Estate, fee simple owners of the land sought to be condemned, Lillian Tom Loo and Kan Jung Luke, purchasers of such land under an agreement of sale with the Trustees of Damon Estate, Beatrice L. Luke, wife of

Kan Jung Luke, and certain of the petitioners, as defendants. It sought to condemn 69.784 acres of land, particularly described in the complaint, but not the right and privilege of the petitioners to remove the buildings on the land or the buildings and improvements which they are entitled to remove. On September 20, 1957, the Territory obtained an order putting it in possession of the land, "together with all property rights of whatsoever nature and improvements thereon, excepting therefrom those certain buildings and improvements," which the petitioners had the right and privilege to remove.

On October 23, 1957, the. Territory filed a motion to amend the complaint by including, within the scope of the taking, the land and all improvements thereon and to amend the order putting it in possession by conforming it to the amended complaint. On October 26, 1957, the Honorable Albert M. Felix, the presiding judge, entered an order allowing the motion.

On October 31, 1957, the presiding judge entered an amended order putting plaintiff in possession, which provided:

"That, excepting for those parcels occupied by defendants represented by HARRIET BOUSLOG, Esq., Plaintiff above named be and is hereby put in possession of all of the parcels of land herein sought to be condemned and more particularly set forth hereinbelow, together with all improvements thereon, and with the right to collect all the rent from the lessees, tenants and occupants of said parcels, provided, that if Defendants Kan Jung Luke, Lillian Tom Loo and Beatrice L. Luke are eventually found to be entitled to such rent, then an appropriate item to that effect shall be included in the Judgment to be entered herein, and the Plaintiff is hereby granted the right to do such work thereon as may be required for the expansion of

the Honolulu International Airport, City and County of Honolulu, Territory of Hawaii."

Lillian Tom Loo, Kan Jung Luke and Beatrice L. Luke filed their answer to the amended complaint on November 7, 1957. On November 12, 1957, they filed a motion for a separate trial. The presiding judge allowed the motion and entered his order for separate trial on December 24, 1957.

On January 13, 1958, the Territory filed a further motion to amend its complaint and to amend the order putting it in possession. The portions of the amendment to the complaint, material to the proceeding before this court, described the property sought to be condemned as "the land and improvements thereon" instead of "the land and all improvements thereon," and added a new paragraph reading as follows:

"That there are or may be certain persons who may claim some interest as lessees, tenants or occupants and who may have the right to remove certain improvements located on the parcels of land sought to be condemned herein; that Plaintiff does not hereby seek to condemn the interest, if any, of said persons and the improvements said persons may own and/or have the right to remove. The Plaintiff does hereby seek to condemn the herein described parcels of land in fee simple absolute including the reversionary interests of the owners thereof, together with all interests of whatsoever kind and nature, subject to the aforementioned interests, if any."

The portion of the amendment to the order putting the Territory in possession, material to this proceeding, substituted for the paragraph in the amended order putting plaintiff in possession entered on October 31, 1957, and quoted above, the following paragraph:

"That subject to the rights, if any, of holdover

tenancies of tenants or their respective assigns, Plaintiff be and is hereby put in possession of all of the parcels of land herein sought to be condemned, and more particularly set forth hereinbelow with the right to collect all the rent from the holdover tenants, or their respective assigns."

The presiding judge granted the motion on February 19, 1958.

The petitioners allege in their petition that the presiding judge set March 3, 1958, at 9 o'clock in the morning as the date and time of trial for the determination of compensation to the owners of the land on which the improvements of the petitioners stand. The Territory denied this allegation and has alleged that the judge has set April 17, 1958, at 9 o'clock in the morning as the date and time for such trial.

In their petition, the petitioners seek a writ of mandamus from this court directing the Honorable Albert M. Felix:

1. To vacate his order fixing March 3, 1958, as the date of trial of the interests of Lillian Tom Loo, Kan Jung Luke and Beatrice L. Luke and to hold in abeyance the setting of a new trial date until the determination of the issues raised by the petition;

2. To vacate his order of February 19, 1958, amending the complaint and the order putting the Territory in possession insofar as it authorizes the striking, from the amended complaint and order of possession, of the improvements belonging to the petitioners which are affixed to and a part of the realty covered by the order of possession, and

3. To vacate his order directing a separate trial of the interests of Lillian Tom Loo, Kan Jung Luke and Beatrice L. Luke.

The petitioners base their petition on the language of

R. L. H. 1955, § 236-2, relating to mandamus. The petitioners take the position that in entering the orders complained of, the presiding judge committed a flagrant abuse of judicial discretion in disregard of their legal rights and that this court may properly intervene by mandamus to prevent a denial of justice.

With the exception of *Fong* v. *Sapienza,* 39 Haw. 79, this court has held consistently that where there is a discretion in the trial judge, the exercise of such discretion may not be interfered with by mandamus. (*Matter of Waterhouse,* 2 Haw. 241; *Spreckels* v. *Circuit Judge,* 10 Haw. 198; *Collector of Customs* v. *Circuit Judge,* 12 Haw. 99; *Matter of Schmidt,* 13 Haw. 332; *Scott* v. *Stuart,* 22 Haw. 576; *Matter of Tactacan,* 42 Haw. 141)

In *Fong* v. *Sapienza,* a majority of this court held that mandamus may issue where there is a showing of manifest abuse of discretion resulting in a denial of justice on the authority of the following quotation in *Collector of Customs* v. *Circuit Judge, supra,* from *Virginia* v. *Rives,* 100 U. S. 323: "In what case such a writ is warranted by the principles and usages of law, it is not always easy to determine. Its use has been very much extended in modern times, and now it may be said to be an established remedy to oblige inferior courts and magistrates to do that justice which they are in duty, and by virtue of their office, bound to do. It does not lie to control judicial discretion, except when that discretion has been abused." But the dissenting justice in that case pointed out that the majority quoted from *Virginia* v. *Rives* out of context and failed to quote the following statement that immediately followed: "* * * but it is a remedy when the case is outside of the exercise of this discretion, and *outside of the jurisdiction of the court or officer to which or to whom the writ is addressed."* (Emphasis supplied) The precise holding in *Virginia* v. *Rives* is that mandamus should issue because the court to

which it was directed had not acquired jurisdiction of the case. *Collector of Customs*. v. *Circuit Judge* itself does not stand for the proposition quoted by the majority because there mandamus was denied.

In *La Buy* v. *Howes Leather Co.*, 352 U. S. 249, the Supreme Court of the United States held that the reference by a district judge to a master of the trial of antitrust cases amounted to little less than an abdication of his judicial function, depriving the parties of a trial before the court of the basic issues involved in the litigation, and therefore an abuse of judicial discretion, and affirmed the judgment of the court of appeals in issuing writs of mandamus to the district judge to vacate his order of reference.

Here we are not presented with a case of abdication of judicial function as in the *La Buy* case. Nor do we need to consider the extent of the applicability of *Fong* v. *Sapienza*, for we do not see any abuse of discretion on the part of the trial judge.

For a full understanding of the petitioners' position that the presiding judge committed a flagrant abuse of judicial discretion, it is necessary to understand the meaning of the various steps thus far taken by the Territory in the eminent domain proceeding.

The Territory filed its complaint in order to acquire the land necessary for the expansion of the Honolulu International Airport. In acquiring such land, the Territory is, in a sense, acting as trustee for the public. (*Emerson* v. *City of Somerville*, 166 Mass. 115, 117, 44 N. E. 110, 112) It is duty bound to acquire the land at the least possible cost to the public, consistent with the right of the owners to just compensation. For the expansion of the airport, the Territory eventually requires the entire interest in the land, but not the buildings which the petitioners have the right to remove. Thus, originally, the Territory sought to take the entire interest in the land but not the right and

privilege of the petitioners to remove the buildings or the buildings which were subject to such right and privilege. Apparently, the Territory saw some legal difficulty in taking the land, apart from the buildings. So, it next sought to take the entire interest in the land, including the buildings. But it did not have immediate need of the portions of the land on which the buildings stood. It, therefore, agreed to the entry of an order putting it in possession by the terms of which the portions of the land subject to the tenancies of the petitioners were excluded. The Territory, apparently considered, upon further study, that if it took the entire interest in the land, it could not require the petitioners to remove the buildings and that it would be saddled with the buildings for which it had no use and for which it would be required to pay. So, it amended the complaint to exclude from the scope of the taking the petitioners' interests in the land and the buildings which the petitioners may own and have the right to remove. The difference between the original complaint and the complaint as finally amended is that in the original complaint the Territory excluded from the scope of the taking the buildings which the petitioners may own and have the right and privilege to remove, while in the complaint as finally amended it excluded the petitioners' interests in the land, as well as such buildings. By the last amendment, the Territory sought to place itself in precisely the same position as the fee simple owners with respect to the petitioners. The fee simple owners may terminate the petitioners' existing tenancies in the land by giving to the petitioners written notices of refusal to extend at least thirty days before the expiration of such tenancies. Upon such termination, the petitioners may remove the buildings which they had erected but may not compel the fee simple owners to take over and pay for such buildings.

The petitioners insist that the Territory may not put

itself in the position of the fee simple owners, and that, if it takes the land, it must take, and pay just compensation for, the buildings thereon because buildings are an integral part of the land under the established principles of real property law.

The petitioners' position poses the following question: Where a condemner needs a tract of land for public use and is confronted with the following situation:

 (a) portions of the land are subject to quarterly tenancies;

 (b) the tenancies are terminable on thirty days' notice;

 (c) the tenants have the right to remove the buildings standing on the portions of the land that they occupy upon the termination of their tenancies;

 (d) the condemner eventually requires the entire interest in the land free and clear of the tenancies but not the buildings which the tenants have the right to remove;

 (e) the condemner does not require the land until the existing tenancies are duly terminated; and

 (f) the condemner does not require the removal of the buildings until a reasonable time has elapsed after the due termination of the tenancies,

may the condemner take a reversionary interest in such tract, that is, a fee simple title subject to the existing tenancies and the tenants' right of removal of the buildings; or, if it takes the land, must it at the same time take the buildings that it does not require and pay just compensation therefor to the tenants?

The first part of the question may be divided further into the following two questions:

1. Could the Territory originally have excluded from the scope of the taking the petitioners' interests, as quarterly tenants, in the land, and the buildings which the

petitioners own and have the right to remove?

2. If the answer to the above question is in the affirmative, may the Territory exclude such interests and buildings after having once included them in the scope of the taking?

The answer to the question as to whether the Territory originally could have excluded the petitioners' interests in the land, and the buildings which the petitioners own and have the right to remove, is found in R. L. H. 1955, § 8-5, which provides that, in the taking of private property for public use, the condemner may acquire a fee simple estate or any lesser estate. A fee simple estate subject to an existing tenancy is a lesser estate than a fee simple estate.

The Federal statutes relating to condemnation also provide for the taking of an estate less than fee simple. Section 258a of Title 40 of the United States Code provides that upon the filing of a declaration of taking and the deposit in court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in the declaration, the title to the land in fee simple absolute, or such less estate or interest therein as specified in the declaration, shall vest in the United States.

There is no precedent of this court which has construed our statute. The Federal statute has been construed in *New York Telephone Co. v. United States*, 136 F. (2d) 87, and *United States v. Tavares Construction Co.*, 175 F. (2d) 379.

In *New York Telephone Co. v. United States*, the government filed a declaration of taking of the fee simple title to the land subject to existing public utility easements. The telephone company had such easements in the condemned land, but it was not joined as a party to the proceeding. So, it filed a notice of appearance and claim for compensation. The government moved to strike the

notice and claim. The district court granted the motion. The court of appeals affirmed the order of the district court on the ground that, since the rights of the telephone company were excluded from the taking, it had no standing as a party in the proceeding.

In *United States* v. *Tavares Construction Co.*, one of the parcels taken was subject to a lease and a portion of the parcel, described as the "site," was subject to a sublease. The sublessee had an option from the lessee to purchase the site and the facilities and machinery thereon upon the expiration of the sublease. The government, by a declaration of taking, took the parcel in fee simple absolute, except the right, title and interest of the lessee, including all improvements and fixtures located thereon or in any way appertaining thereto. The court held that, because of such exception in the declaration of taking, the interest of the sublessee in the site and its option to purchase the site and the facilities and machinery thereon were not condemned, such interest and option being derived through the lessee, and that the sublessee was not entitled to any compensation in the proceeding.

Thus, the cases stand for the proposition that where an estate less than fee simple is taken, as authorized by statute, the owner of the interest that has been excluded from the taking is not entitled to compensation in the condemnation proceeding.

With regard to the question as to whether the Territory may exclude the petitioners' interests in the land and the buildings which the petitioners own and have the right to remove, after it once included them in the scope of the taking, the answer to that question is also found in our statutes.

An exclusion of an interest from the scope of the taking is an abandonment of the proceeding as to such interest. Although we do not have a statute which specifically au-

thorizes abandonment, such authority is implicit in R. L. H. 1955, § 8-25, which allows damages upon abandonment of proceeding "before reaching a final judgment."

It has been held that a statute providing that an eminent domain proceeding may not be discontinued after confirmation of the verdict clearly recognizes the right of discontinuance before confirmation of the verdict. (*In re Board of Education of City of Detroit,* 242 Mich. 658, 219 N. W. 614) By the same reasoning, a statute which allows damages upon abandonment of a proceeding before the entry of a final judgment implies an authorization to discontinue before final judgment.

Where abandonment is authorized, such abandonment may be partial, not only as to area but also as to interest. (*Johnson & Wimsatt, Inc.* v. *Reichelderfer,* 66 F. [2d] 217; *People* v. *Superior Court of Los Angeles County,* 47 Cal. App. [2d] 292, 118 P. [2d] 47, aff'd 120 P. [2d] 655; *In re Mt. Vernon Ave. in City of New York,* 102 N. Y. S. 159; *Tacoma Eastern R. Co.* v. *Smithgall,* 58 Wash. 445, 108 P. 1091)

Entry of an order of possession under R. L. H. 1955, § 8-27, is not a bar to the exercise of authority to abandon. But the authority must be exercised before the entry of final judgment. That also is implicit in R. L. H. 1955, § 8-25, which provides that whenever a proceeding is abandoned before reaching final judgment "the possession of the property concerned shall be restored to the defendant entitled thereto."

As construed in *United States* v. *Sunset Cemetery Co.,* 132 F. (2d) 163, the Federal law does not permit abandonment after the filing of declaration of taking. In that case, the cemetery company had a drainage easement across the condemned land. In its declaration of taking, the government declared that the estate taken "is in fee simple absolute, subject to outstanding permanent

easements for highway purposes." It did not exclude the drainage easement. Later the government moved to amend the declaration of taking so as to exclude the drainage easement. Over the objection of the cemetery company the district court granted the motion and dismissed the cemetery company from the proceeding. The cemetery company appealed on the ground that, upon the filing of the declaration of taking, the government was immediately vested with the title to the drainage easement; that the title thus acquired could not be taken from the government except by its own authorized alienation; that the court was without authority to permit the amendment to the declaration of taking so as to exclude anything already seized; and that by the original declaration the rights of both parties were fixed and could not thereafter be altered. The court of appeals sustained the appeal and reversed the judgment of the district court. In so doing, the court stated: "Clearly under provisions of the statute, condemnation is effected and title completely vested in the Government by the mere filing of a declaration of taking and a judgment adjudging title in the United States is wholly unnecessary. Such is the statutory mandate. It follows that from and after the vesting of title, the Government can be divested only by virtue of appropriate congressional authorization and not by an amended taking."

The holding in *United States* v. *Sunset Cemetery Co.* is based on the fact that under the Federal statutes, title to the land sought to be taken passes to the government immediately upon the filing of a declaration of taking. It does not apply to a proceeding under our statute where title to the property or interest taken vests in the condemner not by the filing of the complaint, nor by the entry of an order of possession, but only upon the entry of the final order of condemnation. R. L. H. 1955, § 8-24, provides: "When all payments required by the final judg-

ment have been made, the court shall make a final order of condemnation, which shall describe the property condemned and the purposes of such condemnation, a certified copy of which shall be filed and recorded in the office of the registrar of conveyances, and thereupon the property described shall vest in the plaintiff."

The petitioners argue that, even if the Territory may take less than a fee simple estate, it may not take land apart from the buildings, that if it takes the land it must necessarily take and pay for the buildings because the legal definition of land includes the buildings thereon. They rely on Nichols on Eminent Domain, 3d Ed., § 5.81 [2], where it is stated:

"It frequently happens that, in the case of a lease for a long term of years, the tenant erects buildings upon the leased land or puts fixtures into the buildings for his own use. It is well settled that, even if the buildings or fixtures are attached to the real estate and would pass with a conveyance of the land, as between landlord and tenant they remain personal property, and, in the absence of a special agreement to the contrary, may be removed by the tenant at any time during the continuation of the lease provided such removal may be made without injury to the freehold. This rule is, however, entirely for the protection of the tenant and cannot be invoked by the condemning party. If the buildings or fixtures are attached to the real estate, they must be treated as real estate in determining the total award, but in apportioning the award they are treated as personal property and credited to the tenant."

They also cite cases which hold that, where a condemner takes land which is subject to leases under which the lessees have the right to remove the buildings thereon, the lessees are entitled to just compensation for the buildings

and may not be relegated to their right of removal.

An examination of the cases on which the statement in Nichols on Eminent Domain is based shows that such statement applies only in a situation where the entire interest in the land, including the leasehold, is taken, not where the leasehold is excluded from the taking. The same may be said of the cases cited by the petitioners.

The petitioners do not discuss or state the facts of the cases that they cite. They merely quote excerpts of opinions in such cases. The quotations are plausible, if they are read out of their context. But they are delusive unless they are considered in the proper context of the facts to which they relate. Illustrative of the type of cases cited by the petitioners are *United States* v. *Seagren,* 50 F. (2d) 333 and *Burkhart* v. *United States,* 227 F. (2d) 659.

Both *United States* v. *Seagren* and *Burkhart* v. *United States* are cases in which the leasehold interests under which the tenants had the right to remove the buildings were not excluded and were prematurely terminated by the taking. That the court, in the *Seagren* case, had in mind a situation in which the leasehold was taken, and not a situation in which the leasehold was excluded, is evident from the following question that it posed: "The question thus becomes whether or not this private stipulation for removal between the landlord and the tenant inures to the benefit of the government *when condemning the estates of both?"* (Emphasis supplied) In the *Burkhart* case, fee simple title to "the lands with all buildings and improvements thereon and all appurtenances thereto" was taken. The declaration of taking excepted "existing easements for public roads and highways, for public utilities, for railroads and pipe lines, and with respect to Tracts Q-1115 and Q-1117, subject also to rights and interests of the Columbia Irrigation District, except any and all assessments thereby." No mention was made of the exclusion

of the leasehold in question. The court said: "In view of the language of the statute, it was incumbent upon the government to designate expressly the interest less than fee simple title or the exceptions thereto by excluding the leasehold or fixtures and structures, if that were desired."

The extent to which the Federal courts will go where there is an exclusion of an interest from the scope of the taking is shown in *New York Telephone Co.* v. *United States, supra.* There the government took a fee simple title to the land required for the development of aviation facilities at Floyd Bennett Field in Brooklyn "subject to existing public utility easements." The telephone company, which was not joined by the government as a party to the proceeding, filed a notice of appearance and a claim for compensation, alleging that for many years before the institution of the condemnation proceeding it had owned, maintained and operated within the limits of the condemned property certain necessary fixtures and equipment consisting of underground ducts, cables, manholes and appurtenances; that upon the acquisition of title to the condemned land (Parcel No. 1) the "petitioner-plaintiff demanded and procured the immediate possession thereof to the uses and purposes of this proceeding, and the claimant, upon like demand of said petitioner-plaintiff, and subsequent to the date of said acquisition herein of said Parcel No. 1 accordingly removed" certain of its manhole covers, ducts and cables; and that such removal rendered valueless its entire "Flatbush Avenue-Neponset Underground and Submarine Telephone Line," which extended beyond Parcel No. 1, and necessitated relocating its entire lines on substituted routes. It further alleged that the fair and reasonable value of its physical property located within Parcel No. 1 was estimated to be $28,271, and the damage, less estimated realized salvage, suffered as a result of the necessary relocation of its lines was

$68,300. The district court granted the government's motion to strike the notice of appearance and claim as insufficient in law. In affirming the order of the district court, the court of appeals stated:

"The question presented lies within a very narrow compass. The proceeding rests upon a declaration of taking signed by the acting Secretary of the Navy. Upon the filing of such a declaration and the deposit in the court of the estimated compensation, title to the lands 'in fee simple absolute, or such less estate or interest therein as is specified in said declaration' vests in the United States. 40 U.S.C.A. § 258a. In the case at bar the declaration specified that the estate taken 'is in fee simple, subject to existing public utility easements, if any.' The judgment of condemnation likewise provided that the title taken was 'subject to existing public utility easements.' It seems obvious that the rights and physical equipment of the Telephone Company were excluded from the condemnation. The appellant's argument that the lack of specific description of the existing public utility easements vitiates their exclusion is not persuasive; nor has authority been cited which supports it. Certainly the 'subject to' phrase in the declaration of taking and the petition in condemnation was enough to give notice to the appellant that its easements were not being taken and that the compensation deposited in the court had not been estimated with reference to them. Moreover, as counsel for the United States points out, the reverse procedure of taking fee simple title in the first instance and later excluding utility easements which will not interfere with the governmental project would give rise to difficulties. See United States v. Sunset Cemetery Corp., 7 Cir., 132 F. 2d 163; United States v. 16,572 Acres of Land, D.C.S.D. Tex., 45 F. Supp. 23. Since

the appellant's rights were not condemned, no compensation can be awarded in this proceeding and consequently its notice of appearance and claim were properly stricken.

"It is urged that under the circumstances alleged in the claim, namely, the appellant's removal of its equipment upon demand of the United States, it is fictional to say that its property was not taken. But the Government's liability for compensation to be awarded herein is limited by the statute authorizing the proceeding. Cf. United States v. Shingle, 9 Cir., 91 F. 2d 85, 89, certiorari denied, 302 U.S. 746, 58 S. Ct. 264, 82 L.Ed. 577; Kanakanui v. United States, 9 Cir., 244 F. 923; Carlisle v. Cooper, 2 Cir., 64 F. 472. There is no suggestion that the declaration of taking has been amended. Without that the allowance of compensation herein would be unauthorized. This is not to say that the appellant is without remedy. If the unnamed governmental agent to whose demand the Telephone Company yielded was authorized to make such demand it may be that a claim for the property appropriated can be successfully prosecuted in the Court of Claims, or, if the demand was unauthorized, that the agent may be compelled to respond in damages personally. Cf. United States v. North American Transp. & Trading Co., 253 U. S. 330, 40 S.Ct. 518, 64 L.Ed. 935. But these are questions which do not arise in the present proceeding and could not be determined on the present record."

The petitioners also refer to *Jackson* v. *State,* 213 N. Y. 34, 106 N. E. 758. That case involved a taking of a warehouse which contained machinery, shafting, elevators and conveyors. These articles were so annexed to the land, and the purpose of the annexation was such, that as between vendor and vendee they would have constituted fixtures.

The court, in an opinion written by Judge Cardozo, held that the board of claims erred in disallowing compensation for the enhancement of value of the warehouse due to the presence of these fixtures. The petitioners quote a portion of the opinion which states:

"It is intolerable that the state, after condemning a factory or warehouse, should surrender to the owner a stock of secondhand machinery and in so doing discharge the full measure of its duty. Severed from the building, such machinery commands only the prices of secondhand articles; attached to a going plant, it may produce an enhancement of value as great as it did when new. The law gives no sanction to so obvious an injustice as would result if the owner were held to forfeit all these elements of value."

Omitted from the quotation is the following statement which immediately follows:

"An appropriation of land, unless qualified when made, is an appropriation of all that is annexed to the land, whether classified as buildings or as fixtures, and so it has frequently been held. * * * We say 'unless qualified when made,' because we do not need at this time to decide whether the state, in giving notice of appropriation, may except fixtures that would retain, after severance from the soil, a substantial value as personalty, and thus restrict the payment to the difference between the value of the detached articles and the value added to the building when they were used in connection with it. * * * If that may be done in any case, it can only be when the purpose is made plain in the act of appropriation. The rights of the parties became fixed at that time, and must then be reciprocal. If the state has the right, under a general notice of appropriation, to insist that title to the fixtures has passed to it with the land, the owner has the correla-

tive right to insist upon payment. The law does not leave the title in a state of suspense. The value of the fixtures ought, therefore, to have been considered in estimating the total value of the property appropriated by the state."

From the foregoing statement, it is apparent that *Jackson* v. *State* also applies only to a case of unqualified taking.

At this point, we shall advert to the clause in the lease which provides that upon condemnation all compensation representing the value of the improvements erected by the lessee shall be payable to the lessee. That is only a provision for the apportionment of compensation between the lessors and the lessee when the condemner takes the leasehold interest and becomes subject to the payment of just compensation for such improvements, and does not apply where the leasehold interest is excluded from the taking.

The Territory proceeded to exclude the petitioners' interests in the land, and the buildings which the petitioners have the right to remove, from the scope of the taking, by an amendment to the complaint. The motion for amendment was filed before trial and, therefore, well within the time permitted by our statute for abandonment. Under Hawaii Rules of Civil Procedure, the allowance of amendment is within the sound discretion of the court. Under rule 81 (b), the rules apply to eminent domain proceedings "except insofar as and to the extent that they are inconsistent with specific statutes of the Territory relating to such proceedings." R. L. H. 1955, § 8-17, provides: "In all proceedings under this part the court shall have power at any stage of the proceeding to allow amendments in form or substance in any complaint, citation, summons, process, answer, motion, order, verdict, judgment or other proceeding, including amendment in the description of the lands sought to be condemned, whenever such amendment will not impair the substantial rights of any party in interest."

The Territory's last amendment is an amendment in substance but it does not impair the substantial rights of the petitioners. By the taking under the amended complaint, the Territory will take the place of the fee simple owners of the land sought to be taken. After the taking the petitioners may assert against the Territory the same rights that they are entitled to assert against the fee simple owners before the taking. The petitioners' rights are not diminished in any way by the taking of the fee simple title subject to their interests in the land and the buildings which they own and have the right to remove. They undoubtedly have incurred expenses by reason of the previous inclusion of their interests in the scope of the taking. For the recovery of such expenses, they may have recourse to R. L. H. 1955, § 8-25.

There is no principle of law which prohibits fee simple owners from selling lands subject to existing encumbrances, including leases or other tenancies, regardless of whether the purchasers are private parties without the power of eminent domain or governmental bodies or other entities invested with the power of eminent domain. If the Territory and the fee simple owners of the land in question had agreed on the amount of just compensation for the latters' interest in such land, the normal procedure would have been for such owners to convey the land subject to the petitioners' existing tenancies therein. The petitioners would have had no legal basis for preventing such conveyance. Upon such conveyance, the Territory would have acquired a fee simple title in the land subject to such tenancies. Such result would have been no different from the position of the Territory under its last amendment to the complaint.

If the petitioners' position that, in an eminent domain proceeding, the Territory may not put itself in the position of the fee simple owners with respect to the petition-

ers represents the law, such law gives a windfall to the petitioners at the expense of the public merely by the fortuitous circumstance of the Territory and the fee simple owners failing to agree on the amount of just compensation. That is, assuming that the amount of just compensation that the petitioners will obtain for the buildings in the eminent domain proceeding is greater than the value of the buildings to them or the prices for which the buildings can be sold. Such is not the law.

In *Emerson* v. *City of Somerville, supra,* the petitioner claimed damages for the taking of the buildings on land required by the city for a public park. The city acquired the land by accepting an offer of the fee simple owner to sell, not by a taking in eminent domain. The petitioner claimed ownership of the buildings. Assuming that the petitioner owned the buildings and the city took the land with notice of such ownership, under the Massachusetts law, he was only a tenant at will of the land and was subject to the owner's right to convert his tenancy into a tenancy at sufferance by a conveyance, as well as to end it by three months' notice. After the conveyance of the land by the fee simple owners, the city gave the petitioner three months' notice to remove the buildings. Before the expiration of the three-month period the buildings were destroyed by fire and the petitioner collected insurance on them as his own. The court held that the petitioner was not entitled to damages. In so holding, Justice Holmes, for the court stated:

"What else has the petitioner suffered? His occupancy has been ended after an allowance of all the time to which, in any aspect, he was entitled. That is all. Surely, this is not something for which the city must indemnify him. Some rights of an owner it has over land which it has bought and paid for, although as a trustee, for the public; and some of these

rights it may exercise without paying a second time, even under the stricter of our diverging lines of decisions. If it were otherwise, we do not see why it would not be equally the duty of the city to pay if it gave a notice to quit at the end of one, ten, or a hundred years. So that the statute practically would have enlarged the petitioner's estate by a gift out of the pockets of others. We do not so read its intent."

It may be noted that in *Emerson* v. *City of Somerville,* the petitioner had collected the insurance on the buildings when they burned. However, the opinion makes it clear that the holding of the court does not depend on that circumstance.

In the consideration of any eminent domain proceeding, we are guided by two lodestars. On the one hand, there is the injunction in the Fifth Amendment of the Constitution that private property shall not be taken for public use without just compensation. On the other hand, the constitutional injunction shall not avail as a shield for the squandering of public funds under the pretext of just compensation. A person must not be placed in a worse position than before by the compulsory taking of his property. But neither is he entitled to be placed in a better position. The prime question that we must have in our mind is: What has the person lost by the taking? Not, what has the condemner gained? (*Boston Chamber of Commerce* v. *Boston,* 217 U. S. 189, 195)

The petitioners lost nothing by the allowance of the last amendment to the complaint. Their property is not taken. The Territory amended the complaint because it decided not to take the petitioners' property. Anomalously, the petitioners complain because their property is not taken. They do not complain that the taking of the fee simple title, subject to their interests, places them in a worse position than before the taking. They complain that the allow-

ance of the amendment takes away from them the right to just compensation for the buildings which they could have claimed if the Territory proceeded to take the entire interest in the land in accordance with the complaint as first amended on October 26, 1957. Neither the requirement of just compensation under the Fifth Amendment nor the provisions of our statutes governing eminent domain proceedings prevent the Territory from withdrawing, before the right became vested in the petitioners, any advantage which it unwittingly gave them.

The presiding judge properly allowed the amendment. After the allowance of the amendment, the petitioners are not concerned with the trial of the issues relating to the compensation for the taking of the fee simple title, subject to their interests, and they are not deprived of any of their rights by a separate trial granted to Lillian Tom Loo, Kan Jung Luke and Beatrice L. Luke.

The petition for a writ of mandamus is denied.

*Harriet Bouslog* (*Bouslog & Symonds* on the brief) for petitioner, for the application for writ of mandamus.

*John P. Russell,* Special Deputy Attorney General (*Harold W. Nickelsen,* Assistant Attorney General, on memorandum in opposition to issuance of writ) for the Territory.

*J. Garner Anthony* (*Robertson, Castle & Anthony* and *Chuck Mau* [*Mau, Hong & Kanemoto*] on memorandum in opposition to issuance of writ and for motion to dismiss) for Lillian Tom Loo, Beatrice L. Luke and Kan Jung Luke.

### DISSENTING OPINION OF STAINBACK, J.

I cannot agree with the opinion of the majority as expressed herein.

This is a suit in eminent domain brought pursuant to the resolution of the Hawaii Aeronautics Commission as follows:

"RESOLVED (1) that the public necessity requires the condemnation for public use, namely, for Honolulu International Airport expansion, of *the lands* of the Damon Tract adjacent to the airport, delineated on the map on this table; (2) that the Territory proceed immediately with condemnation proceedings of the *said land* so needed; (3) that the Attorney General be requested to institute suit for such purpose." (Emphasis added.)

The facts relative to the various pleadings, motions, amendments and other proceedings that have taken place in the court below are set forth in the majority opinion.

That "the lands of the Damon Tract" include the improvements thereon—erected before the expiration of long-term leases—and that the Territory in taking such is liable to the owners thereof is elementary law. The rights to compensation "accrued at the date of summons." (R. L. H. 1955, c. 8, § 22.)

"A condemnation proceeding is an action in rem. It is not the taking of rights of designated persons, but *the taking of the property itself*. Duckett & Co. v. United States, 266 U. S. 149, 151, 45 S. Ct. 38, 69 L. ed. 216." (*Eagle Lake Improvement Co.* v. *United States,* 160 F. [2d] 182, 184.)

The proceeding takes the land including all improvements thereon and the question of the division of the compensation as between landlord and tenant depends upon the terms of the contract between the landlord and tenant, to which contract the Territory is not a party and with which it is not concerned. This will be discussed hereinafter.

The main difficulty presented is whether *mandamus* will lie to compel the trial of the interests of the lessor and the lessees in one proceeding and prevent the withdrawal of the sum of $3,585,999.

This court has frequently held that mandamus is not a

substitute for appeal; that where there is a discretion in the trial judge, in the absence of a clear abuse of such discretion it will not be interfered with by mandamus. The latest decision of this court so holding was *Petition Tactacan, Writ of Mandamus,* 42 Haw. 141.

The object of mandamus is set forth in section 236-2, Revised Laws of Hawaii 1955, as follows:

"The object of this order is to prevent a denial of justice, and it therefore issues in all cases where the law has assigned no specific relief by the ordinary means, or even where a party has other means of relief, if the slowness of ordinary legal forms is likely to produce such a delay, that the public good and the administration of justice will suffer from it, and where justice and reason require that some mode should exist of redressing a wrong, or an abuse of any nature whatever."

In the case of *Virginia* v *Rives,* 100 U. S. 313, 323, the statement is made:

"In what case such a writ [of mandamus] is warranted by the principles and usages of law it is not always easy to determine. Its use has been very much extended in modern times, and now it may be said to be an established remedy to oblige inferior courts and magistrates to do that justice which they are in duty, and by virtue of their office, bound to do. It does not lie to control judicial discretion, except when that discretion has been abused."

The quotation thereafter states:

"One of its peculiar and more common uses is to restrain inferior courts and to keep them within their lawful bounds."

*La Buy* v. *Howes Leather Co.,* 352 U. S. 249, decided January 14, 1957, sustained the Court of Appeals in issuing writs of mandamus requiring the Federal District

Judge to vacate his orders referring two civil antitrust actions to a master for a hearing. Paragraph 1 of the syllabus states:

> "Since the Court of Appeals could at some stage of the antitrust proceedings entertain appeals in these cases, it had discretionary power under the All Writs Act, 28 U. S. C. § 1651(a), in proper circumstances to issue writs of mandamus reaching them."

In its discussion of the Court of Appeals issuing the writ, the court pointed out that the cases had been burdensome to the petitioner and showed the long records that had already taken place in the District Court proceeding, the many amendments and preliminary pleas, etc., as in the case before us.

See *Fong, Auditor* v. *Sapienza, Judge,* 39 Haw. 79, where a writ of mandamus was issued because of an abuse of discretion by the trial judge with reference to a continuance.

Under the liberal provisions of the territorial statute mandamus will lie in this case if, as stated in *Carlock* v. *United States,* 53 F. (2d) 926:

> "It is a fundamental principle, governing condemnation proceedings, where several interests are involved, such as estates for life, or in remainder, or leaseholds, or in reversion, in the property to be condemned, all should be combined in determining the value of the fee, after which the total value of the fee can be subdivided in satisfaction of the values fixed upon the various interests involved."

A condemnation proceeding is in the nature of an action in rem. (*Burkhart* v. *United States,* 227 F. [2d] 659 [CCA 9, 1955]; *United States* v. *Honolulu Plantation Co.,* 182 F. [2d] 172 [CCA 9, 1950]; *Eagle Lake Improvement Co.* v. *United States,* 160 F. [2d] 182; *Meadows* v. *United States,*

144 F. [2d] 751 [1944]; *Carlock* v. *United States,* 53 F. [2d] 926.)

"*It is not the taking of rights of designated persons, but the taking of the property itself.* Duckett & Co. v. United States, 266 U. S. 149, 151, 45 S. Ct. 38, 69 L. ed. 216. * * * The sum determined to be due for the taking is apportioned between the claimants, *but, 'as between the condemnor and the condemnee, the property is valued as a whole.'*" (*Eagle Lake Improvement Co.* v. *United States,* 160 F. [2d] 182.) (Emphasis added.)

See also *Meadows* v. *United States,* 144 F. (2d) 751, 752. There are many other authorities to a like effect.

It is elementary that "land" or "real estate," as used in statutes relative to eminent domain, include the improvements attached to the realty. The authorities are unanimous to that effect.

"Not only is soil affected, but everything annexed to the soil is included. It matters not that such conditions are by act of nature or by artificial affixation." (Nichols, *Eminent Domain,* 3d ed., vol. 2, § 5, p. 10.)

"Fixtures upon the property taken must be valued and paid for as part of the real estate * * *." (Lewis, *Eminent Domain,* 3d ed., vol. 2, p. 1276.)

Our statute relative to condemnation proceedings provides as follows:

"*Damages assessed, how.* In fixing the compensation or damages to be paid for the condemnation of any property, *the value of the property sought to be condemned with all improvements thereon shall be assessed,* and if any of the improvements are separately owned, the value thereof shall be separately assessed. * * *" (R. L. H. 1955, § 8-21.) (Emphasis added.)

"*Assessed as at day of summons.* For the purpose of assessing compensation and damages, the right thereto shall be deemed to *have accrued at the date of sum-*

*mons,* and its actual value at that date shall be the measure of valuation of all property to be condemned \* \* \*.

"No improvement put on the property subsequent to the date of the service of the summons shall be included in the assessment of compensation or damages." (R. L. H. 1955, § 8-22.) (Emphasis added.)

It will be noted that the rights of the occupants *"accrued"* on September 13, 1957 when the tenants still held tenancies under the provisions of their various leases; prior to that time there could be no claim that the Territory had any right to the property either of the lessor or of the lessees.

The dictionary gives the following definition for the word "accrue":

"To come into existence as an enforceable claim; to vest as a right; as, a cause of action has *accrued* when the right to sue has become vested. \* \* \*"

See also the numerous cases cited in *Words and Phrases* (pages 582-602, particularly pages 592 to 597) where the word "accrue" or "accrued" means to become absolute or vested.

As pointed out in the majority opinion, before the amendment to the complaint it included within the taking the land and all improvements thereon. The amendment attempted to strike from the complaint the interests, if any, of the petitioners in the land and the right of the petitioners to remove their improvements.

In justifying this the majority opinion attempts to distinguish *United States* v. *Sunset Cemetery Co.,* 132 F. (2d) 163, where the court *refused* to permit an amendment to the declaration of taking so as to exclude anything already seized; it held that by the original declaration of taking the rights of both parties were fixed and could not thereafter be altered. The claim is made that under our

statute title to the property or interest taken vests in the condemning authority not by the filing of the complaint, nor by the entry of an order of possession, but only upon the entry of the final order of condemnation. But see the decision in *Honolulu* v. *Lord, et al.,* 36 Haw. 348, wherein it was said:

"Section 64, Revised Laws of Hawaii, 1935 [now R. L. H. 1955, § 8-22], provides that for the purpose of assessing compensation and damages *the right thereto shall be deemed to have accrued at the date of the summons,* which is equivalent to saying *the property shall be deemed to have been taken at that time."* (Emphasis added.)

As further pointed out in this decision, equitable principles are applied in the payment of just compensation for the taking of property.

Numerous cases, including cases in the Supreme Court of the United States, hold that the "blight of condemnation" exists from the date of the institution of proceedings as the owner cannot thereafter fully utilize his property and just compensation requires that he be made whole.

If we are to apply equitable principles to "just compensation" (Fifth Amendment to the Constitution of the United States) we must take the substance rather than the form. The majority opinion states that the only recourse the petitioners would have would be for abandonment and not for compensation for the taking of their interests. This would be true if there were a bona fide abandonment. Obviously there was none. By first abandoning its original taking including all the lands and its subsequent retaking, the Territory attempts to deprive the tenants of an accrued right by a flimsy technicality. One cannot do indirectly what would be illegal if done directly. (*Dress Mfg. Co.* v. *Cadinha,* 36 Haw. 732, 742.)

If we start with the indisputable proposition that im-

provements placed upon land become a part thereof, and the Territory instituted a proceeding to condemn "the lands of the Damon Tract adjacent to the airport," it became obligated to pay the full value thereof as of the date of summons; this would include the improvements thereon.

For example, if we assume that lot X owned by A has a value of $1,000 and improvements thereon of the value of $1,500, the Territory would be obligated to pay $2,500 as the value of the land even though it might not desire or use the improvements upon the land.

If we have the same lot X owned by A and B or more owners and the government condemns it, it would have to pay the same amount, to be divided among the various owners in accordance with their respective interests.

If we assume that the fee of lot X was owned by A, and that A had leased it to B with the provision that in case of condemnation B should have the value of the improvements he might erect thereon, the government would still be obligated to pay $2,500 compensation for the *property* and A and B would divide according to their contract.

It is no concern of the government how the owner of the fee and the owner of the leasehold divide the proceeds. This is only justice and common sense. There are numerous authorities to this effect, a few of which are as follows:

In *United States* v. *Seagren,* 50 F. (2d) 333, it is stated:

"The question thus becomes whether or not this private stipulation for removal between the landlord and the tenant inures to the benefit of the government when condemning the estate of both? *Can the United States, exercising its right of eminent domain, change the essential character of structures from realty, which it must pay for, to personalty, which it may order removed without payment, because a landlord and tenant, dealing upon private considerations of reciprocal interest and expenditure, have years before agreed as*

*between themselves that upon their termination of their lease the tenant might remove his structures?*
"* * *

*"If the structures here in question had been built by the landlord, they would have been taken and paid for by the government without question, as the government concedes they are now part of the realty. Is the tenant's reserved power of removal as against the landlord's termination of the lease to work a forfeiture in favor of the government?* We think not.

"The inherent character of these structures is real estate; no agreement can change that character, though the landlord may waive the right which might otherwise accrue to him from the character of the structures placed upon his land. At the most, that is all that this agreement did.

"We find the controlling rule well stated in Nichols on Eminent Domain: 'It frequently happens that, in the case of a lease for a long term of years, the tenant erects buildings upon the leased land or puts fixtures into the building for his own use. It is well settled that, even if the buildings or fixtures are attached to the real estate and would pass with a conveyance of the land, as between landlord and tenant they remain personal property, and, in the absence of special agreement to the contrary, may be removed by the tenant at any time during the continuation of the lease provided such removal may be made without injury to the freehold. *This rule is however entirely for the protection of the tenant and cannot be invoked by the condemning party. If the buildings or fixtures are attached to the real estate, they must be treated as real estate in determining the total award, but in apportioning the award they are treated as personal property and credited to the tenant.'* Nichols on Eminent Domain (2d Ed.) vol. 1, § 234."

*State* v. *Miller,* 92 S. W. (2d) 1073, 1074, where the State sought to condemn certain land for highway purposes and took the position that a building on the desired strip should be removed by the owner to another portion of his land and the State should be required to pay for no more than the bare land taken plus the cost of removing the improvements, the court said "Such a rule would be intolerable. * * * The building here under consideration was a permanent improvement and constituted an appurtenance to the land which would pass with the title in an ordinary conveyance, and in our opinion the state should be required, as held by the trial court, to accept and pay for it along with the land so condemned."

In *Brazos River Conservation and Reclamation District* v. *Adkisson,* 173 S.W. (2d) 294, the court held that where fixtures were of such a character that if put in by the owner they would constitute a part of the real estate, they must be paid for as real estate by the condemner, and that it is immaterial that as between the lessor and the lessee the lessee had the privilege of removing such fixtures at the termination of the lease.

In *Jackson* v. *State of New York,* 213 N. Y. 34, 35-36, Justice Cardozo, one of the great judges of modern times, went even further and held in eminent domain the value of fixtures in a building taken by the State must be considered in estimating total value of property appropriated. The board of claims had refused to award any compensation to the claimant for the machinery, shafting, elevators and conveyors contained in the building. This equipment was annexed to the building in such form *as between the vendor and vendee* they would have constituted fixtures. Justice Cardozo stated:

"We think that the power of the State is not so great, nor the plight of the citizen so helpless. Condemnation is an enforced sale, and the State stands toward the

owner as buyer toward seller. On that basis the rights and duties of each must be determined. It is intolerable that the State, after condemning a factory or warehouse, should surrender to the owner a stock of second-hand machinery and in so doing discharge the full measure of its duty. Severed from the building, such machinery commands only the prices of second-hand articles; attached to a going plant, it may produce an enhancement of value as great as it did when new. The law gives no sanction to so obvious an injustice as would result if the owner were held to forfeit all these elements of value."

Again, in a New York case, *In re Block Bounded by Avenue A, etc.,* 66 Misc. Rep. 488, 122 N. Y. S. 321, 339, the court said:

"The city took the entire buildings as they stood, including the trade fixtures therein, and for the purposes of this proceeding they must all be regarded as real property; that is, as between the tenant and the city, the trade fixtures were real property and must be paid for by the city the same as a building, and the tenant was under no more obligation to remove them than he would be to remove a building if he were the owner. As between the tenant and the owner, however, the trade fixtures were personalty, and could be removed, and therefore any award made for them would go to the tenant."

The majority opinion attempts to distinguish the cases cited heretofore on the ground that the government in those cases was taking the whole fee and not something less than fee simple. Certainly the government may under proper circumstances if its needs require condemn less than a fee simple interest, but in this case the attorney general was authorized and directed to take the adjacent "lands" and there was no intent or authorization to take

less than the fee simple. It is true the attorney general did attempt to take two bites instead of one in the proceeding to obtain title to all of the interests without paying the full value therefor, that is, the value of the improvements upon the land. But all the cases hold that the contract between landlord and tenant does not inure to the benefit of the government and it may not avail itself of any agreement between landlord and tenant so as to deprive the tenant of "just compensation."

We think this court may take judicial notice that a large part of the land in the Territory is held by a very few large estates which will only lease and not sell their properties. For example, on the Island of Oahu more than one-third of its area is owned by three estates, properties of which include urban as well as rural lands; that many residences, business establishments, banks and elaborate hotels are built upon such leased property; that both the territorial and federal governments have taken under eminent domain, and are continuing to take, large and valuable areas throughout the Territory where the improvements are of much greater value than the bare land.

Years ago most of the leases made by these large estates contained a provision that in case of condemnation the lessee should not be entitled to any claim for compensation but that "all compensation payable or to be paid for or on account of the said premises by reason of the condemnation as aforesaid, shall be payable to and be the sole property of the lessors, and the lessee shall have no interest in or claim to such compensation or any part or parts thereof whatsoever." (*Bishop* v. *Pittman,* 33 Haw. 647, 650.)

When the site for Hickam Field was taken by the government of the United States for an airfield, the Bishop Estate received many thousands of dollars for improvements which had been put upon its land by various tenants,

the government having to pay full value of the lands and improvements. The writer of this opinion represented the United States in this proceeding which took over Watertown and other adjoining areas with all the improvements thereon represented mostly by numerous small residences and business establishments, many such representing the life savings of industrious but humble citizens. It was heartbreaking to see these tenants deprived of their property with no compensation. Under the contract the Bishop Estate received the full compensation or total value of the property for which the United States had to pay. This court held that the Bishop Estate could not donate to the tenants the value of improvements erected by them, even though it was reaping where it had not sown. (*Bishop* v. *Pittman, supra.*)

To cure this harsh provision in the leases, many landlords thereafter revised such covenants (some upon demands of tenants) so as to provide that in case of condemnation the lessee should receive the value of the improvements placed upon the land by him. Now the Territory by a subterfuge attempts to deprive the tenants of all value of his covenants by saying you can remove your improvements under another covenant (which was for an additional protection of the tenant) and therefore it is unnecessary to pay you the value thereof. The government was not a party to the contract nor was the contract for the benefit of the government, but for the tenants, and certainly because of this contract the government should not be permitted to take property at less than its fair value. If this is permissible the tenant is truly between Scylla and Charybdis or, in popular parlance, between the devil and the deep blue sea when he has erected improvements upon leasehold property.

In *United States* v. *General Motors*, 323 U. S. 373, 381, where the United States Government took over for a tem-

porary period the unexpired term of a lease and wished to pay only the rental value of an empty building for such taking from the tenant, the court refused to permit such proceeding, saying:

"If the Government need only pay the long-term rental of an empty building for a temporary taking from the long-term tenant a way will have been found to defeat the Fifth Amendment's mandate for just compensation in all condemnations except those on which the contemplated public use requires the taking of the fee simple title. * * * If such a result be sustained we can see no limit to utilization of such a device; and, if there is none, the Amendment's guaranty becomes, not one of just compensation for what is taken, but an instrument of confiscation fictionalizing 'just compensation' * * *."

Again, on page 382, the court points out that when the government does not take the entire interest but by the form of its proceeding chops it into bits of which it takes only what it wants, refusing to pay more than the market rental value for the chips so cut off, it states that this is neither the taking nor just compensation the Fifth Amendment contemplates. On page 383 the court stated:

"For fixtures and permanent equipment destroyed or depreciated in value by the taking, the respondent is entitled to compensation. An owner's rights in these are no less property within the meaning of the Fifth Amendment than his rights in land and the structures thereon erected. And it matters not whether they were taken over by the Government or destroyed, since, as has been said, destruction is tantamount to taking. This is true whether the fixtures and equipment would be considered such as between vendor and vendee, or as a tenant's trade fixtures."

Conceding that the government may, upon payment of

just compensation, take less than the fee simple, in the present case it did not do so; in fact, very obviously it had no intention to take less than the fee simple. Under the resolution of the Hawaii Aeronautics Commission the attorney general was authorized to and did bring a suit to condemn "the lands of the Damon Tract adjacent to the airport, delineated on the map." It may not use a "device" to escape payment of just compensation, namely, the value of the land taken which included all improvements thereon.

The right to compensation of the land which the Territory took — and that included all improvements thereon — "accrued" on September 13, 1957, in the defendants to the condemnation proceedings. As to how this "just compensation" for what the government was taking, namely, lands which included improvements, was to be apportioned between tenant and landlord was not a matter of concern to the Territory; it was a question between the landlord and the tenants.

As pointed out in case after case, the obligation of the government to pay "just compensation" is not affected by how the "just compensation" may be divided between landlord and tenant. (See cases *supra.*) Any other construction would result in depriving tenants of the property without due process of law and would be a complete disregard of the equitable principles governing compensation in eminent domain. It is well settled that you cannot violate equitable principles by doing indirectly that which you cannot do directly. (*Dress Mfg. Co.* v. *Cadinha, supra.*) Certainly, this "device" is much more flagrant than the one in the cases heretofore cited such as in *United States* v. *General Motors, supra.*

Apparently the movants for a separate trial do not trust a jury finding as between landlord and tenant — and the Territory has joined with them by depositing with the court one dollar as the value of the lessees' interests. The

only ground set forth in the motion for a separate trial is that there are certain leases existing between the movant and the tenants. Clearly, the only trial that can be fair both to the Territory and to the various defendants is to proceed to the condemnation as a single proceeding with the jury under proper instructions valuing both the interest of the landlord and the several tenants.

The authorities cited in the court below by movants for a separate trial do not stand for their contention. Practically all these cases have been discussed heretofore. For example, the motion for separate trials cites *Burkhart* v. *United States, supra,* which was before the Ninth Circuit Court of Appeals on two occasions. This case was remanded after the second appeal with the following statement:

"The cause is reversed as to the lessees and remanded with directions to proceed to trial between the government and the parcel and that any question as to allocation of the just compensation between the claimants be dealt with after the award for the whole has been settled."

There was a similar holding in *Eagle Lake Improvement Co.* v. *United States* previously cited. It stated as between the condemner and the condemnee the property is valued as a whole.

Incidentally, it may be noted that the Territory in assessing taxes included the improvements of the tenants as realty. (Personal property is not taxed in the Territory.) Yet it now claims that such improvements are personalty.

The contract provisions between the landlord and the tenants are intended to serve as a shield to the tenants and cannot be used by the Territory as a sword to destroy them.

I believe this court has ample authority under our territorial statute, section 236-2 heretofore quoted, to issue the writ of mandamus requested and it should direct the lower

court to proceed with the trial of the case as to all parties and all interests, with the jury under proper instructions fixing the fair value of the interest of each of the parties as of September 13, 1957.